UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
JANE DOE # 1,
JANE DOE # 2,                                    **Civil Case No.: 19-cv-1542**

                                                 **PLAINTIFF DEMANDS**
                              Plaintiffs,         **A TRIAL BY JURY**

              -*against*-                         **AMENDED COMPLAINT**

JETBLUE AIRWAYS CORPORATION,
ERIC JOHNSON, individually, and
DAN WATSON, individually

                              Defendants.
-----------------------------------------------------x


    Plaintiffs, JANE DOE #1 and JANE DOE # 2, by and through their attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of defendants, JETBLUE AIRWAYS CORPORATION (hereinafter "JET BLUE"), ERIC JOHNSON, individually (hereinafter "JOHNSON"), and DAN WATSON, individually (hereinafter "WATSON") upon information and belief, as follow:


## NATURE OF CASE

    Plaintiffs, JANE DOE #1 and JANE DOE # 2, complain pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), the Administrative Code of the City of New York and the laws of the State of New York and of Puerto Rico, based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), and 28 U.S.C. §1367 seeking declaratory relief and damages to redress the injuries Plaintiffs have suffered as a result of, *inter alia*, sex discrimination, gender

discrimination, sexual harassment, hostile work environment by Defendants.

## JURISDICTION AND VENUE

1.      Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII.   The Court also has diversity jurisdiction, as all of the Plaintiff's are diverse from all of the Defendants, and Plaintiffs each claim at least $75,000 in damages exclusive of attorney's fees and costs.   The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

2.      Additionally, the Court has supplemental jurisdiction under the State and City laws of New York and Puerto Rico.

3.      Around July 17, 2018, Plaintiff JANE DOE #1, submitted a Charge of Discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC").   The federal charge number is 520-2018-04968.

4.      Around July 2, 2018, Plaintiff JANE DOE # 2 submitted a Charge of Discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC").   The federal charge number is 520-2018-04708.

5.      Around February 4, 2018, Plaintiff JANE DOE #1 received a Right to Sue Letter from the EEOC for her federal charge number 520-2018-04968.

6.      Around February 14, 2018, Plaintiff JANE DOE # 2 received a Right to Sue Letter from the EEOC for her federal charge number 520-2018-04708.

7.      As such, Plaintiffs have satisfied all administrative prerequisites and is timely filing this case within ninety (90) days of receiving her Right to Sue letter.

8.      Venue is proper in this court, as a substantial part of the events giving rise to this action

arose in Queens County, within the Eastern District of New York, as well because the Defendants reside within New York, and Defendant JETBLUE is incorporated in Queens County within the Eastern District of New York.

## PARTIES

9.      At all times material, Plaintiff JANE DOE #1 (herein referred to as "Plaintiff" and/or "DOE #1") is seeking damages to redress injuries she has suffered as a result of being discriminated against by her employer on the basis of her sex and gender, together with sexual assault and harassment.

10.      At all times material, Plaintiff DOE #1 is an individual woman residing in Riverton, Utah.

11.      At all times material, Plaintiff DOE #1 was employed by Defendants JETBLUE AIRWAYS CORPORATION.

12.      Plaintiff DOE # 1 regularly flies through New York as part of her employment with Defendant JETBLUE AIRWAYS CORPORATION. In fact, Plaintiff DOE # 1 is currently based out of J.F.K. International Airport and flies through New York at least two to three times a month while working for Defendant JETBLUE AIRWAYS CORPORATION.

13.      At all times material, Plaintiff JANE DOE #2 (herein referred to as "Plaintiff" and/or "DOE #2") is seeking damages to redress injuries she has suffered as a result of being discriminated against by her employer on the basis of her sex and gender, together with sexual assault and harassment.

14.      At all times material, Plaintiff JANE DOE # 2 is an individual female residing in Fort

Worth, Texas.

15.     At all times material, Plaintiff JANE DOE #2 was employed by Defendants JETBLUE AIRWAYS CORPORATION.

16.     Plaintiff DOE # 2 regularly flies through New York as part of her employment with Defendant JETBLUE AIRWAYS CORPORATION. In fact, Plaintiff DOE # 2 flies through New York at least two to three times a month while working for Defendant JETBLUE AIRWAYS CORPORATION and often stays overnight near Defendant JETBLUE AIRWAYS CORPORATION corporate headquarters located in New York.

17.     At all times material, Defendant JETBLUE AIRWAYS CORPORATION was and still is a foreign business corporation doing business in the State of New York, with their principal place of business located at 27-01 QUEENS PLAZA NORTH LONG ISLAND CITY, NEW YORK, 11101.

18.     Defendant JETBLUE AIRWAYS CORPORATION's decisions with respect to employee sexual assault and/or sexual harassment complaints stem from their corporate headquarters located in New York. In fact, Defendant JETBLUE AIRWAYS CORPORATION maintains a pattern and practice stemming from their corporate headquarters located in New York of routinely ignoring employee complaints concerning sexual assault and/or sexual harassment.

19.     At all times material, Defendant ERIC JOHNSON (hereinafter referred to as "JOHNSON"), was and is a Flight Officer employed by JETBLUE AIRWAYS CORPORATION, residing in Washington D.C., and held supervisory authority over Plaintiff with regard to her employment.

20.     At all times material, Defendant DAN WATSON (hereinafter referred to as "WATSON"), was and is a Flight Officer employed by JETBLUE AIRWAYS

CORPORATION, residing in Washington D.C., and held supervisory authority over Plaintiff with regard to her employment.

## RELEVANT FACTS

JANE DOE # 1

21.     On or about May 9, 2018, Plaintiff DOE # 1 worked a flight from Ronald Reagan Washington National Airport in Washington D.C. to Luis Muñoz Marín International Airport in San Juan Puerto Rico, and then returning to Newark New Jersey.  Plaintiff DOE # 1 arrived in San Juan around 1:00 p.m. with a layover until the next morning.

22.     Plaintiff, along with crew-member Jane Doe # 2 and another crew-member, went to Intercontinental Hotel in San Juan, Puerto Rico, checked in, went to their rooms to change and then went to the beach to relax.

23.     Plaintiff, along with crewmembers Doe # 2 and the other crew-member, arrived at the beach, found some chairs and set up camp, where they schmoozed, and relaxed with some drinks they had prepared.

24.     Plaintiff, along with Doe # 2 and the other crewmember noticed two men, Defendants Johnson and Watson, sitting near them and noticed they were pulling beers out of a lunch bag. Doe #1, Doe # 2 and the other crewmember began talking to Johnson and Watson and found out they were both pilots for Defendant JETBLUE.

25.     After some time, Defendant JOHNSON handed an opened beer from his lunch box to Plaintiff Doe # 1.  She drank some of the beer, handed it to Doe # 2 who drank some of the beer and then handed it to the other crewmember, who also drank from the same can.  The beer was laced with a drug, and after that point, the rest of the night became a blur for Doe # 1, Doe # 2

and the other crewmember.

26.     Plaintiff Doe # 1 did not remember when or how, but the group left the beach and headed back to the hotel.

27.     Plaintiff, in a haze from being drugged, next became aware that she was in bed with Defendant JOHNSON and her fellow crewmember.   Defendant JOHNSON was on top of Plaintiff raping her by penetrating her vaginally against her will.   Plaintiff felt the influence of the drug that Defendant JOHNSON laced the beer with, and Plaintiff was unable to react to the situation, but was simply aware that it was happening.   Plaintiff's flashes of memory included Defendant JOHNSON having sexual intercourse with the other crewmember who was also under the influence of the drugs.   Defendant JOHNSON also said, "thank you for making my fantasy come true."

28.     The next morning, when Plaintiff awoke, she was groggy and felt numb.   When Plaintiff got on the airplane for her return trip to Newark Airport in Newark New Jersey, Plaintiff spoke with the third female crewmember who had also been drugged and raped, and they both expressed to each other that they were stunned by what had happened.   During the flight, Plaintiff, Doe # 2 and the third crewmember were all nauseous and each had to use the bathroom to vomit, an effect they had not felt before despite having consumed alcohol previously.

29.     When Plaintiff arrived at Newark airport that day, May 10, 2018, she developed a tremendous fear that she may have been exposed to an STD when Defendant JOHNSON raped her, so she emailed Defendant JOHNSON and asked him to contact her.

30.     Plaintiff then went to speak to Doe # 2 to piece together any more information about the night before.   Plaintiff and Doe # 2 were then joined by the third crewmember, and they discussed the effects they all felt, including nausea, dizziness, loss of memory, vomiting and not

feeling a reaction to the events of the evening.  The three of them then looked up the symptoms of rape drugs and found their symptoms were consistent with having been drugged, and that they all began feeling those symptoms and effects right after drinking from the Defendants' beer, which further confirmed that they had been drugged by Defendants JOHNSON and WATSON.

31.    While Plaintiff, Doe # 2 and the third crewmember were talking, Defendant JOHNSON emailed Plaintiff back.  Plaintiff told Defendant JOHNSON that she was concerned she had contracted an STD, and asked Defendant JOHNSON if he was STD free, as she and the third crewmember were.  Defendant JOHNSON replied that he would get tested.

32.    The next day, on or about May 11, when Plaintiff completed her trip and returned home, immediately upon landing, Plaintiff went to the hospital and let them know she had been drugged and sexually assaulted, and she asked to be tested for any drugs.  Plaintiff was tested and was given medication to help prevent STDs.  The hospital reported the incident and the police were contacted and prepared a report.

33.    Plaintiff reported the sexual assault, rape and sex and gender discrimination to Defendant JETBLUE at their corporate headquarters in New York, and despite JETBLUE purporting to investigate the matter, no corrective action was ever taken against Defendants JOHNSON and WATSON.

34.    After she was raped, Plaintiff was informed by her medical doctor that despite the fact that she had been previously tested and was STD free, she had contracted the STD human papillomavirus ("HPV"), which she could only have contracted from Defendant JOHNSON.

35.    Defendant JOHNSON intentionally gave Plaintiff DOE # 1 HPV.

36.    Defendants JOHNSON and WATSON drugged Plaintiff and although he left the scene after having been scratched, Defendant WATSON drugged Plaintiff with the intent to rape

Plaintiff.

37.    Defendant JET BLUE failed to take any corrective action in response to Plaintiff's complaint of sexual assault, rape and sex and gender discrimination.

38.    Not only did Defendant JET BLUE fail to terminate Defendants JOHNSON and WATSON, they failed to even guarantee that Plaintiff would not run into Defendants JOHNSON and WATSON while at work.

39.    In fact, the only option was for Plaintiff to bid out of Embraer E190 aircraft flights because Defendants JOHNSON and WATSON would be on those types of flights. However, bidding out Embraer E190 aircraft flights precludes Plaintiff from more than seven hundred and fifty (750) flights resulting in the significant loss of seniority status and financial opportunities.

40.    As a result of Defendant's actions, Plaintiff strongly avoids layovers in San Juan, Puerto Rico. However, when she did have the occasional layover in Puerto Rico, Plaintiff generally avoided interacting with the crew and leaving her hotel room so as to avoid running into Defendants JOHNSON and WATSON.

41.    In fact, Plaintiff generally tries avoiding any layover unless she feels extremely comfortable and safe with the crew. Even so, Plaintiff makes sure not to have more than one drink and remains constantly vigilant.

42.    To date, Plaintiff still avoids going to crew lounges outside of New York and will often look up Defendants JOHNSON and WATSON's flights to see if their flight-plans overlap.

43.    As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

44.    As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other

compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

45.     As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all the Defendants, jointly and severally.

46.     The above are just some examples of some of the unlawful discrimination and retaliation to which Defendants subjected Plaintiff.

47.     Defendants' actions constituted a continuing violation of the applicable federal, state city and county laws.

JANE DOE # 2

48.     On or about May 9, 2018, Plaintiff DOE # 2 worked a flight from Ronald Reagan Washington National Airport in Washington D.C. to Luis Muñoz Marín International Airport in San Juan Puerto Rico, and then returning to Newark New Jersey.  Plaintiff DOE # 2 arrived in San Juan around 1:00 p.m. with a layover until the next morning.

49.     DOE # 2, along with crew member DOE # 1 and the third crewmember, went to the Intercontinental Hotel in San Juan, Puerto Rico, checked in, went to their rooms to change and then went to the beach to relax.

50.     DOE # 2, along with DOE # 1 and the third crewmember, arrived at the beach, found some chairs and set up camp, where they schmoozed, and relaxed with drinks they had prepared.

51.     DOE # 2, along with DOE # 1 and the third crewmember noticed two men (Defendants JOHNSON and WATSON) sitting near them and noticed they were pulling beers out of a lunch

bag.  DOE # 2, DOE # 1 and the third crewmember began talking to Defendants JOHNSON and WATSON and found out they worked for Defendant JETBLUE and were both pilots.

52.    After some time, Defendant JOHNSON handed an opened beer from his lunch box to DOE # 1.  She drank some of the beer, handed it to Plaintiff DOE # 2, who drank some of the beer and then handed it to the third crewmember who also drank from the same can.  The beer was laced with a drug, and after that point, the rest of the night became a blur.

53.    The next memory Plaintiff DOE # 2 has of the evening was being on the elevator at the hotel.  Plaintiff DOE # 2 does not know she got to the elevator or how she left the beach.  On the elevator Defendant JOHNSON said, "we'll take [Doe # 2] up to her floor first" which DOE # 2 thought was odd because her floor was the highest/last floor of all of them.  After that point Plaintiff DOE # 2 has very spotty memories because of the drugs that she ingested from the beer can from Defendants JOHNSON and WATSON.  Plaintiff DOE # 2 vomited a number of times throughout the night and was generally sick from the drugs.

54.    Defendants JOHNSON and WATSON drugged Plaintiff DOE # 2 and intended to rape Plaintiff DOE # 2, but did not when Plaintiff DOE # 2 began vomiting which was a turnoff.

55.    The next morning, around May 10, 2018, Plaintiff DOE # 2 woke up extremely nauseous, tired, and in a weird out of body fog.  Plaintiff DOE # 2 worked the return flight but was extremely nauseous and threw up twice in the airplane bathroom and once in a bag in the back galley, as both bathrooms were occupied.  The sleepiness was something Plaintiff never felt in her life.  When Plaintiff arrived at her hotel in Newark, New Jersey, she fell right back asleep for quite some time.  When she awoke, she was still extremely nauseous, tired and in a fog, feeling the effects of the drugs.

56.    Plaintiff's fellow crewmember, DOE # 1 texted Plaintiff and went to Plaintiff's room to

discuss what had occurred.  Plaintiff and DOE # 2 texted the third crewmember to join them, and they all discussed the effects they each felt from having been drugged by Defendants JOHNSON and WATSON.  DOE # 1 and the third crewmember described how they had returned to DOE # 1's room with Defendant JOHNSON, who then sexually assaulted and raped both DOE # 1 and the third crewmember.

57.    It was not until approximately three days later that Plaintiff DOE # 2 finally stopped feeling nauseous and the fog from the drugs finally lifted, though the extreme tiredness and groggy feeling remained for approximately another day.

58.    Defendants JOHNSON and WATOSN assaulted and battered Plaintiff DOE # 2 and drugged her, with the intent of sexually assaulting and raping her, because of her sex and gender.

59.    Plaintiff DOE # 2 reported the attempted rape and sex and gender discrimination to Defendant JETBLUE in their New York headquarters, but no corrective action was ever taken against Defendants JOHNSON and WATSON.

60.    Defendant JET BLUE failed to take any corrective action in response to Plaintiff's complaint of sexual assault, rape and sex and gender discrimination.

61.    Not only did Defendant JET BLUE fail to terminate Defendants JOHNSON and WATSON, they failed to even guarantee that Plaintiff would not run into Defendants JOHNSON and WATSON while at work.

62.    In fact, the only option was for Plaintiff to bid out of Embraer E190 aircraft flights because Defendants JOHNSON and WATSON would be on those types of flights. However, bidding out Embraer E190 aircraft flights precludes Plaintiff from more than seven hundred and fifty (750) flights resulting in the significant loss of seniority status and financial opportunities.

63.    Around February 2019, Plaintiff ran into Defendant JOHNSON in San Juan, Puerto Rico

in the employee break room. Plaintiff was sitting down with the rest of her crew about to enjoy her lunch, when Defendant JOHNSON entered. Plaintiff immediately began to panic as she quickly grabbed her lunch and promptly left the room.

64.     As a result of the Defendant's actions, Plaintiff DOE # 2 felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

65.     As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.  Plaintiff has further experienced severe emotional and physical distress.

66.     As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against all the Defendants, jointly and severally.

67.     The above are just some examples of some of the unlawful discrimination and retaliation to which Defendants subjected Plaintiff.

68.     Defendants' actions constituted a continuing violation of the applicable federal, state city and county laws.


### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER TITLE VII
### On Behalf of Plaintiffs JANE DOE # 1 and JANE DOE # 2
### (Not Against Individual Defendants)

69.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

70.     Title VII states in relevant part as follows: SEC. 2000e-2. [Section 703] (a) Employer

practices, It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

71.     JET BLUE DEFENDANTS engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by allowing sex discrimination, gender discrimination and a hostile work environment.


**AS A SECOND CAUSE OF ACTION
FOR RETALIATION UNDER TITLE VII
On Behalf of Plaintiffs JANE DOE # 1 and JANE DOE # 2
(Not Against Individual Defendants)**

72.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

73.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a)

provides that it shall be unlawful employment practice for an employer:

> "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

74.     JET BLUE DEFENDANTS engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful employment practices of Defendants.

**AS A THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**NEW YORK STATE LAW**
**(Against All Defendants)**

75.     Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

76.     Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

77.     Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiffs because of their sex and gender.

78.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law § 296.

**AS A FOURTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**NEW YORK STATE LAW**
**(Against All Defendants)**

79.     Plaintiffs repeat and re-allege each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

80.     New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

81.     Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

## AS A FIFTH CAUSE OF ACTION
## FOR RETALIATION UNDER
## NEW YORK STATE LAW
## (Against All Defendants)

82.     Plaintiffs repeat and re-allege each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

83.     New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

84.     Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against the Plaintiffs.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (Against All Defendants)

85.     Plaintiffs repeat and re-allege each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

86.     The Administrative Code of City of NY §8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of         any person, to refuse to hire or

employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

87.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against Plaintiffs because of their sex and gender.

88.     Plaintiffs hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

<u>**AS A SEVENTH CAUSE OF ACTION**</u>
<u>**FOR DISCRIMINATION UNDER**</u>
<u>**THE NEW YORK CITY ADMINISTRATIVE CODE**</u>
<u>**(Against All Defendants)**</u>

89.     Plaintiffs repeat and re-allege each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

90.     The New York City Administrative Code Title 8, §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . , to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

91.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(1) (e) by discriminating against Plaintiffs because of their opposition to the unlawful employment practices of Plaintiffs' employer.

**AS AN EIGHTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE
(Against All Defendants)**

92.     Plaintiffs repeat and re-allege each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

93.     The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

94.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

**AS A NINTH CAUSE OF ACTION
FOR DISCRIMINATION UNDER
THE NEW YORK CITY ADMINISTRATIVE CODE
(Against All Defendants)**

95.     Plaintiffs repeat and re-allege each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

96.     Section 8-107(19), entitled Interference With Protected Rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

97.     Defendants violated the above section as set forth herein.

## AS A TENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (Against All Defendants)

98.     Plaintiffs repeat and re-allege each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

99.     Section 8-107(13) entitled Employer Liability for Discriminatory Conduct by Employee, agent or independent contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section." b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

100.    Defendants violated the above section as set forth herein.


## AS AN ELEVENTH CAUSE OF ACTION FOR
## ASSAULT AND BATTERY
## AGAINST DEFENDANTS JOHNSON AND WATSON, INDIVIDUALLY,

101.    Plaintiffs repeat, reiterate and re-allege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

102.    That the aforesaid occurrences and resultant injuries to Plaintiffs were caused by reason of the intent, carelessness and recklessness of Defendants, their agents, servants and/or employees, suddenly and without provocation did physically assault and batter Plaintiffs herein.

**AS A TWELFTH CAUSE OF ACTION BY VICTIM OF CONDUCT CONSTITUTING
CERTAIN SEXUAL OFFENSES
AGGRAVATED SEXUAL ABUSE IN THE FIRST DEGREE
ON BEHALF OF PLAINTIFF JANE DOE # 1
AGAINST DEFENDANT JOHNSON, INDIVIDUALLY**

103.    Plaintiffs repeat, reiterate and re-allege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

104.    § 130.35 of the New York State Penal Law provides as follows: Rape in the first degree 1 A person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person: 1. By forcible compulsion; or 2. Who is incapable of consent by reason of being physically helpless; or 3. Who is less than eleven years old; or 4. Who is less than thirteen years old and the actor is eighteen years old or more. NY CLS Penal § 130.35

105.    § 130.50 of the New York State Penal Law provides as follows: Criminal sexual act in the first degree 1 A person is guilty of criminal sexual act in the first degree when he or she engages in oral sexual conduct or anal sexual conduct with another person: 1. By forcible compulsion; or 2. Who is incapable of consent by reason of being physically helpless; or 3. Who is less than eleven yeas old; or 4. Who is less than thirteen years old and the actor is eighteen years old or more. NY CLS Penal § 130.50.

106.    Section 130.70 of the New York State Penal Law; "Aggravated sexual abuse in the first degree" provides that "A person is guilty of aggravated sexual abuse in the first degree when he inserts a foreign object in the vagina, urethra, penis or rectum of another person causing physical

injury to such person:

(1) By forcible compulsion; or

(2) Who is incapable of consent by reason of being physically helpless;

107.    Aggravated sexual abuse in the first degree is a class B felony."

108.    Defendant JOHNSON violated the herein sections as set forth herein.

109.    Defendant JOHNSON sexually assaulted Plaintiffs in a way that was in violation of the above.

110.    § 213-c of the Civil Practice Law and Rules provides as follows: Action by victim of conduct constituting certain sexual offenses: Notwithstanding any other limitation set forth in this article, a civil claim or cause of action to recover from a defendant as hereinafter defined, for physical, psychological or other injury or condition suffered by a person as a result of acts by such defendant of rape in the first degree as defined in section 130.35 of the penal law, or criminal sexual act in the first degree as defined in section 130.50 of the penal law, or aggravated sexual abuse in the first degree as defined in section 130.70 of the penal law, or course of sexual conduct against a child in the first degree as defined in section 130.75 of the penal law may be brought within five years. As used in this section, the term "defendant" shall mean only a person who commits the acts described in this section or who, in a criminal proceeding, could be charged with criminal liability for the commission of such acts pursuant to section 20.00 of the penal law and shall not apply to any related civil claim or cause of action arising from such acts. Nothing in this section shall be construed to require that a criminal charge be brought or a criminal conviction be obtained as a condition of bringing a civil cause of action or receiving a civil judgment pursuant to this section or be construed to require that any of the rules governing a criminal proceeding be applicable to any such civil action. NY CLS CPLR § 213-c.

111.    Defendant JOHNSON is civilly liable under § 213-c for violating all of the above Sections of the New York State Penal Law as described above.

112.    Defendant JOHNSON violated the above law as set forth herein.

## AS A THIRTEENTH CAUSE OF ACTION
## GENDER MOTIOVATED VIOLENCE PROTECTION ACT
## ON BEHALF OF PLAINTIFFS JANE DOE # 1 AND JANE DOE # 2
## AGAINST DEFENDANTS JOHNSON AND WATSON, INDIVIDUALLY,

113.    Plaintiffs repeat, reiterates and re-allege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

114.    N.Y. ADC. LAW § 8-903 states in relevant part "For purposes of this chapter: a. "Crime of violence" means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction. b. "Crime of violence motivated by gender" means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.

115.    N.Y. ADC. LAW § 8-904 : NY Code – Section 8-904: Civil Cause of Action states in relevant part "Except as otherwise provided by law, any person claiming to be injured by an individual who commits a crime of violence motivated by gender as defined in section 8-903 of this chapter, shall have a cause of action against such individual in any court of competent jurisdiction for any or all of the following relief: 1. compensatory and punitive damages; 2. injunctive and declaratory relief; 3. attorneys' fees and costs; 4. such other relief as a court may deem appropriate."

116.    N.Y. ADC. LAW § 8-905 Limitations states in relevant part: "a. A civil action under this chapter must be commenced within seven years after the alleged crime of violence motivated by gender as defined in section 8-903 of this chapter occurred. . . . c. Nothing in this section requires a prior criminal complaint, prosecution or conviction to establish the elements of a cause of action under this chapter.

117.    Defendants' conduct constitutes crimes of "violence motivated by gender" under The Victims of Gender-Motivated Violence Protection Act ("VGMVPA").

118.    As a result of defendant's acts, Plaintiffs have been damaged in an amount to be determined at the time of trial.

## AS A FOURTEENTH CAUSE OF ACTION
## FOR INTENTIONAL INFLICTION OR EMOTIONAL DISTRESS
## (AGAINST ALL DEFENDANTS)

119.    Plaintiffs repeat and re-allege each and every allegation made in the complaint as if they were set forth herein fully at length.

120.    Defendants' behavior was extreme and outrageous to such extent that the action was atrocious and intolerable in a civilized society.

121.    Defendants' conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency.

122.    Defendants caused Plaintiffs to fear for Plaintiffs' own safety.

123.    Defendants' breach of their duties to Plaintiffs caused Plaintiffs to suffer numerous injuries as set forth herein.

124.    As a result of Defendants' acts, Plaintiffs have been damaged in an amount to be determined at the time of trial.

**AS A FIFTEENTH CAUSE OF ACTION**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(AGAINST ALL DEFENDANTS)**

125.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein

126.    Defendants knew, or reasonably should have known, that Defendants were engaging in the unlawful behavior described herein above.

127.    At all times material herein, Defendants knew, or reasonably should have known, that the conduct, acts, and failures to act of all other Defendants and/or supervisors, agents and employees as described herein above violated Plaintiffs rights under federal, state and municipal statutes, codes and ordinances.

128.    At all times material herein, Defendants knew, or reasonably should have known, that the incidents, conduct, acts, and failures to act described herein above, would and did proximately result in emotional distress to Plaintiffs, including, but not limited to, loss of sleep, anxiety, tension, depression, and humiliation.

129.    At all times material herein Defendants, and each of them, knew, or in the exercise of reasonable care should have known, that unless Defendants, and each of them, intervened to protect Plaintiffs, and to adequately supervise, prohibit, control, regulate, discipline, and/or otherwise penalize the conduct, acts, and failures to act, of all other Defendants and/or supervisors, agents or employees as alleged herein above, said conduct, acts, and failures to act would continue, thereby subjecting Plaintiffs to personal injury and emotional distress.

130.    Defendants, and each of them, knew, or in the exercise of reasonable care should have known, that unless Defendants, and each of them, intervened to protect Plaintiffs, and to adequately supervise, prohibit, control, regulate, discipline, and/or otherwise penalize the

conduct, acts, and failures to act of the Defendants and others as described herein, Defendants' failure to so protect, supervise, and intervene would have the effect of encouraging, ratifying, condoning, exacerbating, increasing and worsening said conduct, acts, and failures to act.

131.    At all times material herein, Defendants, and each of them, had the power, ability, authority, and duty to so intervene, supervise, prohibit, control, regulate, discipline, and/or penalize the conduct of all other Defendants and/or supervisors, agents or employees as described herein above.

132.    Despite said knowledge, power, and duty, Defendants and each of them negligently failed to act so as to prevent, supervise, prohibit, control, regulate, discipline, and/or penalize such conduct, acts, and failures to act, or to otherwise protect Plaintiffs.

133.    As a direct and proximate result of the failure of Defendants to protect Plaintiffs, and to adequately supervise, prohibit, control, regulate, discipline, and/or otherwise penalize the conduct, acts, and failures to act of all other Defendants and/or supervisors, agents or employees as alleged herein above, said conduct, acts, and failures to act were perceived by them as, and in fact had the effect of, ratifying, encouraging, condoning, exacerbating, increasing, and/or worsening said conduct, acts, and failures to act.

134.    At all times material herein, the failure of Defendants to protect Plaintiffs, and to adequately supervise, prohibit, control, regulate, discipline, and/or otherwise penalize the conduct, acts, and failures to act of all other Defendants and/or supervisors, agents or employees violated Plaintiff's rights under federal, state, and municipal statutes, codes and ordinances.

135.    As a direct and proximate result of Defendants' actions and failures to act, Plaintiffs has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress; she has incurred and will continue to incur medical expenses for

treatment by mental health and other health professionals, and for other incidental expenses; and she has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.   Plaintiffs are thereby entitled to general and compensatory damages in amounts to be proven at trial.

136.    Defendants' conduct as described herein was malicious and oppressive, and done with a conscious disregard of Plaintiffs' rights.   The acts of Defendants were performed with the knowledge of an employer's economic power over its employees. Defendants, through their officers, managing agents and/or supervisors, authorized, condoned and ratified the unlawful conduct of all of the other Defendants in this action. Consequently, Plaintiffs are entitled to punitive damages from all Defendants.

## AS A SIXTEENTH CAUSE OF ACTION
## FOR VIOLATIONS OF THE LAWS OF PUERTO RICO
## (AGAINST ALL DEFENDANTS)

137.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

138.    As set forth herein, Defendants have violated Plaintiff's rights under Law No. 100 of June 30, 1959, as amended 29 Laws of PR Anno. 146, et seq. ("Law 100"); Law No. 69 of July 6, 1985, as amended, 29 Laws of PR Anno. 1321 et seq.; ("Law 69"), and Law No. 115, supra; Law No. 17 of April 22, 1988, as amended, 29 Laws of PR Anno. 155, et seq., ("Law 17"), the Puerto Rico Anti-retaliation Act, the Puerto Rico Bill of Rights, Article II, Section 1 of the Constitution of the Commonwealth of Puerto Rico and Article 1802 and 1803 of the Puerto Rico Civil Code, 31 Laws of P.R. Anno. 5141 and 5142; and P.R. Laws Ann. tit. 31, § 5141 (1991) ("Article 1802").

**AS A SEVENTEENTH CAUSE OF ACTION
ON BEHALF OF PLAINTIFF JANE DOE # 1
FOR NEGLIGENCE AND FAILURE TO WARN
(AGAINST DEFENDANT JOHNSON)**

139.     Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs of this Complaint, with the same force and effect as if fully set forth herein.

140.     Defendant had a duty to warn Plaintiff that he had an STD.

141.     Defendant had a duty to advise Plaintiff that he had an STD.

142.     Defendant breached such duties.

143.     Plaintiff contracted the STD because of Defendant's failure to warn and negligence.

144.     As a result Plaintiff suffered injuries as set forth herein.

**WHEREFORE**, Plaintiffs demand judgment against all Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a jury trial on all issues to be tried.

Dated: New York, New York
          September 24, 2019

DEREK SMITH LAW GROUP, PLLC
*Attorneys for Plaintiff*

By:      /s/ Daniel Altaras
          Daniel J. Altaras, Esq.
          One Penn Plaza, Suite 4905
          New York, New York 10119
          (212) 587-0760
