UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE # 1,<br>JANE DOE # 2,<br><br>                    Plaintiffs,<br><br>          -against-<br><br>JETBLUE AIRWAYS CORPORATION,<br>ERIC JOHNSON, individually, and<br>DAN WATSON, individually<br><br>                   Defendants. | Civil Case No. 1:19-cv-01542 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JETBLUE AIRWAYS
CORPORATION'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT;
OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

Samantha Abeysekera
samantha.abeysekera@akerman.com
Matthew A. Steinberg
matthew.steinberg@akerman.com
Raymond J. Berti
raymond.berti@akerman.com
AKERMAN LLP
666 Fifth Avenue, 20th Floor
New York, New York 10103
Telephone: (212) 880-3800
Fax: (212) 905-6481

ATTORNEYS FOR DEFENDANT
JETBLUE AIRWAYS CORPORATION

Dated: October 25, 2019
      New York, New York

# TABLE OF CONTENTS

Page(s)

I. Introduction ................................................................................................................... 1

II. Factual Background ........................................................................................................ 5

III. Procedural Posture ......................................................................................................... 8

IV. Legal Standard ............................................................................................................. 12

V. Argument ..................................................................................................................... 13

    A. Plaintiffs' Amended Complaint Should Be Dismissed For Improper Venue. ................................................................................................................ 13

        1. Under Title VII's special venue provision, this case should have been commenced in either the District of Massachusetts or District of Puerto Rico. ................................................................................... 13

        2. Because Plaintiffs intentionally commenced this case in the wrong Court, their Amended Complaint should be dismissed. ......................... 17

    B. Alternatively, Plaintiffs' Amended Complaint Should Be Transferred For The Convenience Of The Parties And Witnesses. ................................................ 20

    C. Alternatively, Plaintiffs' Amended Complaint Should Be Dismissed As Against JetBlue For Failure To State A Claim. .................................................... 22

        1. Plaintiffs fail to state a Title VII sex discrimination claim on either a disparate treatment or hostile work environment theory. ........................ 22

            a. Plaintiffs fail to state a disparate treatment discrimination claim. .............................................................................................. 23

            b. Plaintiffs fail to state a hostile work-environment claim. ............. 25

                i. Plaintiffs do not plausibly allege any basis on which to hold JetBlue liable for Johnson or Watson's alleged conduct. ............................................................... 25

                ii. Plaintiffs do not plausibly allege that their "work environment" was hostile. .............................................. 27

        2. Plaintiffs fail to state a Title VII retaliation claim because they do not plausibly allege, and cannot show, that they have suffered any adverse employment action for engaging in protected activity. .............. 29

        3. Plaintiffs' NYSHRL and NYCHRL claims fail because Plaintiffs do not plausibly allege, and cannot show, that Defendants' alleged discriminatory conduct had any "impact" in New York State or City. .... 30

        4. Plaintiffs' tort claims fail because they are improperly duplicative of their discrimination claims, and because they fail as a matter of law ....... 31

        5. Plaintiffs' claims under Puerto Rico law fail for numerous reasons, including many of those already set forth above. ..................................... 33

VI. Conclusion ................................................................................................................... 35

## Table of Authorities

**Page(s)**

### Cases

*Aguilar v. Immigration & Customs Enf't Div. of the U.S. Dep't of Homeland Sec.*,
811 F. Supp. 2d 803 (S.D.N.Y. 2011)........................................................................................14

*Al-Kaysey v. L-3 Servs. Inc.*,
No. 11-cv-6318, 2013 WL 5447686 (E.D.N.Y. Sept. 27, 2013) ............................................15

*Anderson v. Janson Supermarkets, LLC*,
934 N.Y.S.2d 32 (Sup. Ct. 2011) .............................................................................................31

*Arrocha v. Panama Canal Comm'n*,
609 F. Supp. 231 (E.D.N.Y. 1985) ..........................................................................................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................................13

*Bah v. City of New York*,
13 cv 6690, 2014 WL 1760063 (S.D.N.Y. May 1, 2014)........................................................32

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................................13

*Blakely v. Lew*,
607 F. App'x 15 (2d Cir. 2015) ...............................................................................................18

*E.E.O.C. v. Bloomberg L.P.*,
967 F. Supp. 2d 816 (S.D.N.Y. 2013)......................................................................................30

*Bonilla-Ramirez v. MVM, Inc.*,
No. CV 15-1586, 2017 WL 2712884 (D.P.R. Mar. 30, 2017), *aff'd*, 904 F.3d 88 (1st Cir.
2018) .........................................................................................................................................31

*Burlington N. and Santa Fe Ry. Co. v. White*,
548 U.S. 53 (2006)...................................................................................................................29

*Chau v. Donovan*,
357 F. Supp. 3d 276 (S.D.N.Y. 2019)....................................................................30, 32, 33, 34

*Chien v. Skystar Bio Pharm. Co.*,
256 F.R.D. 67 (D. Conn. 2009), *aff'd*, 378 F. App'x 109 (2d Cir 2010)...............................19

*Chong v. HealthTronics, Inc.*,
No. 06-cv-1287, 2007 WL 9735355 (E.D.N.Y. June 20, 2007)........................................20, 21

*Cold Spring Harbor Lab. v. Ropes & Gray LLP*,
762 F. Supp. 2d 543 (E.D.N.Y. 2011) .....................................................................................12

*Cook v. UBS Fin. Servs., Inc.*,
    No. 05-cv-8842, 2006 WL 760284 (S.D.N.Y. Mar. 21, 2006) ................................................14

*Delgado-Ugarte v. Bank of Am. Corp.*,
    No. 15-2332, 2016 WL 3129129 (D.P.R. June 1, 2016) ......................................................31

*Devlin v. Teachers' Ins. & Annuity Ass'n of Am.*,
    No. 02-cv-3228, 2003 WL 1738969 (S.D.N.Y. Apr. 2, 2003) ............................................28

*Dickerson v. Novartis Corp.*,
    315 F.R.D. 18 (S.D.N.Y. 2016) ........................................................................................21

*Dudla v. Jordan*,
    No. 14-cv-0889 .................................................................................................................20

*Duggins ex rel. Duggins v. Steak'N Shake, Inc.*,
    3 F. App'x 302 (6th Cir. 2001) .........................................................................................29

*Farrior v. George Weston Bakeries Distribution, Inc.*,
    No. 08-CV-2705 JFB WDW, 2009 WL 113774 (E.D.N.Y. Jan. 15, 2009) ..........................22

*Feldman v. L & M Mowing, Inc.*,
    1999 WL 284983 (E.D.N.Y. 1999)....................................................................................18

*Fullwood v. SDH Servs. W., LLC*,
    No. 16-CV-1 (RA), 2016 WL 3951186 (S.D.N.Y. July 20, 2016)........................................19

*Godoy v. Maplehurst Bakeries, Inc.*,
    747 F. Supp. 2d 298 (D.P.R. 2010)...................................................................................33

*Goldlawr, Inc. v. Heiman*,
    369 U.S. 463 (1962).........................................................................................................18

*Haggood v. Rubin & Rothman, LLC*,
    No. 14-cv-34, 2014 WL 6473527 (E.D.N.Y. Nov. 17, 2014) .............................................15

*Jacobson v. Fed. Ins. Co.*,
    No. 95 CIV. 4343 (WK), 1999 WL 893045 (S.D.N.Y. Oct. 15, 1999)...............................31

*Jaeger v. N. Babylon Union Free Sch. Dist.*,
    191 F. Supp. 3d 215 (E.D.N.Y. 2016) ...............................................................................29

*Jorge v. Galarza-Soto*,
    124 F. Supp. 3d 57 (D.P.R. 2015)......................................................................................34

*Kajoshaj v. City of New York*,
    No. 11–cv–4780, 2013 WL 249408 (E.D.N.Y. Jan. 23, 2013), *aff'd*, 543 F. App'x 11 (2d Cir.
    Oct. 15, 2013) ..................................................................................................................15

*Krause v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    No. 10-cv-2603, 2011 WL 1453791 (S.D.N.Y. Apr. 13, 2011) .............................................28

*Lapushner v. Admedus Ltd.*
    No. 18-cv-11530-ALC (S.D.N.Y. Dec. 12, 2018) .................................................................19

*Lopez v. Burris Logistics Co.*,
    952 F. Supp. 2d 396 (D. Conn. 2013) ...................................................................................29

*Maldonado-Catala v. Municipality of Naranjito*,
    No. 13-cv-1561, 2016 WL 1411355 (D.P.R. Apr. 11, 2016), *aff'd*, 876 F.3d 1 (1st Cir. 2017)31, 34

*Minnette v. Time Warner*,
    997 F.2d 1023 (2d Cir. 1993) ................................................................................................16

*Munoz-Nagel v. Guess, Inc.*,
    No. 12-cv-1312, 2013 WL 1809772 (S.D.N.Y. Apr. 30, 2013) .............................................15

*Neil Bros. v. World Wide Lines, Inc.*,
    425 F. Supp. 2d 325 (E.D.N.Y. 2006) ..............................................................................20, 21

*Pardy v. Gray*,
    No. 06-cv-6801, 2007 WL 1825200 (E.D.N.Y. June 22, 2007)............................................16

*Parra v. City of White Plains*,
    48 F. Supp. 3d 542 (S.D.N.Y. 2014)................................................................................22, 23

*Patane v. Clark*,
    508 F.3d 106 (2d Cir. 2007)..............................................................................................23, 29

*Paul v. Postgraduate Ctr. for Mental Health*,
    97 F. Supp. 3d 141 (E.D.N.Y. 2015) .......................................................................24, 27, 28

*Peterson v. JetBlue Airways Corporation*,
    No. 16-cv-04607-DLI-RLM (E.D.N.Y. Aug. 18, 2016)......................................................19

*Polanco v. UPS Freight Servs., Inc.*,
    217 F. Supp. 3d 470 (D.P.R. 2016)......................................................................................33

*Pungitore v. Barbera*,
    506 F. App'x 40 (2d Cir. 2012) ...........................................................................................13

*Richardson v. New York State Dep't of Corr. Serv.*,
    180 F.3d 426 (2d Cir. 1999)................................................................................................25

*Rivera-Concepcion v. Puerto Rico*,
    786 F. Supp. 2d 442 (D.P.R. 2010)......................................................................................34

*RLP Ventures LLC v. All Hands Instruction NFP*,
    No. 18-cv-3988, 2019 WL 1316030 (S.D.N.Y. Mar. 22, 2019)....................................9, 18, 22

*Rogers v. Clinton*,
No. 519-cv-175, 2019 WL 3469462 (N.D.N.Y. Apr. 1, 2019), *report and recommendation adopted sub nom.*, 2019 WL 3454099 (N.D.N.Y. July 31, 2019) ..........................................18

*Rojas-Ramirez v. BMJ Foods, Inc.*,
No. 09-cv-1593, 2011 WL 693621 (D.P.R. Feb. 24, 2011)....................................................33

*Rutty v. Krimko*,
No. 17-cv-6090, 2018 WL 1582290 (E.D.N.Y. Mar. 30, 2018)..............................................32

*Saidin v. New York City Dep't of Educ.*,
498 F. Supp. 2d 683 (S.D.N.Y. 2007).....................................................................................13

*Sharette v. Credit Suisse Int'l*,
127 F. Supp. 3d 60 (S.D.N.Y. 2015)........................................................................................29

*Sheila C. v. Povich*,
11 A.D.3d 120 (3rd Dep't 2004)..............................................................................................32

*Shepherd v. Fischer*,
No. 9:10-cv-1524, 2015 WL 1246049 (N.D.N.Y. Feb. 23, 2015)..........................................24

*Smith v. Reg'l Plan Ass'n, Inc.*,
10-cv-5857, 2011 WL 4801522 (S.D.N.Y. Oct. 7, 2011).......................................................13

*Spar, Inc. v. Info. Res., Inc.*,
956 F.2d 392 (2d Cir. 1992).....................................................................................................18

*Swarna v. Al-Awadi*,
622 F.3d 123 (2d Cir. 2010).....................................................................................................33

*Swentek v. USAIR, Inc.*,
830 F.2d 552 (4th Cir. 1987) ...................................................................................................25

*Tagliaferri v. Szulik*,
No. 15-cv-2685, 2015 WL 5918204 (S.D.N.Y. Oct. 9, 2015)................................................32

*Tlapanco v. Elges*,
207 F. Supp. 3d 324 (S.D.N.Y. 2016)................................................................................20, 21

*Turner v. Atl. Se. Airlines, Inc.*,
No. 1:07-CV-0039, 2008 WL 11319910 (N.D. Ga. Aug. 7, 2008) ........................................26

*Vance v. Ball State University*,
570 U.S. 421 (2013).................................................................................................................26

*Virola v. XO Communications, Inc.*,
No. 05-cv-5056, 2008 WL 1766601 (E.D.N.Y. Apr. 15, 2008)..............................................31

*Ward v. Shaddock*,
     No. 14-CV-7660, 2016 WL 4371752 (S.D.N.Y. Aug. 11, 2016)..........................................27

*Williamson v. Recovery Ltd. P'ship*,
     542 F.3d 43 (2d Cir. 2008)..........................................................................................19

*Wojcik v. Brandiss*,
     973 F. Supp. 2d 195 (E.D.N.Y. 2013) ........................................................................30

*Zaltz v. JDATE*,
     952 F. Supp. 2d 439 (E.D.N.Y. 2013) ........................................................................12

**Statutes**

29 L.P.R.A. § 194a..........................................................................................................33

31 L.P.R.A. § 5141 .........................................................................................................34

31 L.P.R.A. § 5142 .........................................................................................................34

28 U.S.C. § 1391.....................................................................................................15, 16, 17, 19

28 U.S.C. § 1404.......................................................................................................1, 4, 20

28 U.S.C. § 1406.................................................................................................... passim

42 U.S.C. § 2000e-5 ........................................................................................................16

Title VII of the Civil Rights Act of 1964 ...................................................................... passim

New York City Human Rights Law................................................................................ passim

New York State Human Rights Law ............................................................................. passim

Puerto Rico Civil Code Articles 1802 and 1803.....................................................31, 34

**Rules**

Fed. R. Civ. P. 11 ...........................................................................................................19

Fed. R. Civ. P. 12(b)(3)...............................................................................................1, 12

Fed. R. Civ. P. 12(b)(6)..........................................................................................1, 4, 9, 12

**Other Authorities**

Puerto Rico Constitution................................................................................................34

Defendant JetBlue Airways Corporation ("JetBlue") respectfully submits this memorandum of law in support of its motion (the "Motion") for an order dismissing Plaintiffs Jane Doe #1 and Jane Doe #2's (together, "Plaintiffs") Amended Complaint, in its entirety and with prejudice, for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a); or, in the alternative, to transfer the case for the convenience of the parties and witnesses pursuant to 28 U.S.C. § 1404(a); or, in the alternative, if the Court declines to dismiss or transfer on the aforementioned grounds, to dismiss the Amended Complaint as against JetBlue, in its entirety and with prejudice, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6):

## I.    INTRODUCTION

In their Amended Complaint, Plaintiffs – two *currently employed* female JetBlue Inflight Crewmembers (commonly referred to as "Flight Attendants") based at all relevant times out of Logan International Airport in Boston, Massachusetts and residents of Utah and Texas, respectively – set forth almost the same factual allegations and claims they previously set forth in the original Complaint. Specifically, Plaintiffs allege that, while off-duty during an overnight layover in San Juan, Puerto Rico, they were assaulted by two male JetBlue Pilots they had met for the first time earlier that day. These two Pilots – Eric Johnson ("Johnson") and Dan Watson ("Watson") (with JetBlue, "Defendants"), who were also based out of Boston and residents of Kentucky and Virginia, respectively – had never supervised Plaintiffs, never worked with Plaintiffs, and had never before even spoken with Plaintiffs. Nonetheless, while Plaintiffs were relaxing and drinking alcohol on the beach in San Juan, Plaintiffs approached Johnson and Watson, struck up a conversation, and realized that they all worked for JetBlue. Although there are sharp disputes over what followed over the course of that day (disputes which are immaterial for purposes of this motion), Plaintiffs allege that, when they returned from San Juan the next

day, they complained to JetBlue about Johnson and Watson – and that JetBlue commenced an investigation, but thereafter failed to take "corrective action."

Critically, Plaintiffs' amendments to the original Complaint are minimal. Indeed, the Amended Complaint appears to include only 13 paragraphs of new allegations, *see* Am. Compl. ¶¶ 12, 16, 18, 37-42, 60-63,[1] which seemingly represent an attempt to cure Plaintiffs' deficient pleadings regarding venue. Specifically, Plaintiffs now allege that they occasionally fly through New York airports in connection with their work for JetBlue; claim that they have taken steps to avoid any chance encounters with Johnson and Watson at work; and baselessly and speculatively suggest that JetBlue's corporate headquarters in New York are somehow involved in every allegation of sexual harassment across the country, which Plaintiffs' counsel has conceded are based entirely upon information and belief rather than Plaintiffs' personal knowledge. The only other change to the Amended Complaint is the removal of 3 paragraphs previously asserted in the original Complaint, *see* Compl. ¶¶ 38, 56, 72, in which Plaintiffs had falsely alleged that they had been constructively discharged from JetBlue. However, none of these amendments meaningfully address JetBlue's previously stated grounds for dismissal or transfer.[2]

Plaintiffs otherwise assert the same 14 causes of action against JetBlue: sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL")

---

[1]     Citations to the transcript from the June 25, 2019 pre-motion conference before the Honorable Nicholas G. Garaufis, which is attached hereto as Exhibit "A," are abbreviated herein as "Conf. Tr. [page:line]." Citations to Plaintiffs' Complaint are abbreviated herein as "Compl. ¶ [paragraph number]." Citations to Plaintiffs' Amended Complaint are abbreviated herein as "Am. Comp. ¶ [paragraph number]." Citations to the Declaration of Michael Fiske, which is attached hereto as Exhibit "B," are abbreviated here as "Fiske Decl. ¶ [paragraph number]."

[2]     Indeed, Plaintiffs' Amended Complaint contains all the same deficiencies as the original Complaint, and therefore remains subject to dismissal or transfer for all the same reasons explicitly described to Plaintiffs' counsel *no fewer than four times prior to service of the instant Motion. See* Section III, *infra.* By first intentionally delaying the amendment of their original Complaint until *after* Defendants engaged in motion practice (forcing Defendants to needlessly incur legal fees), and then nevertheless failing to meaningfully remedy the factual and legal deficiencies which Defendants repeatedly identified, Plaintiffs have necessitated further unnecessary and costly motion practice.

(Counts 1, 3-4, 6-10); retaliation under Title VII and the NYSHRL (Counts 2, 5); intentional and negligent infliction of emotional distress (Counts 14-15); and violations of Puerto Rico law (Count 16). (Am. Compl. ¶¶ 69-100, 119-138.)

As a preliminary matter, the Amended Complaint should be dismissed because there plainly remains no colorable basis for venue in the Eastern District of New York. Indeed, Plaintiffs are Utah and Texas residents who challenge employment actions which occurred in Massachusetts (Jane Doe #1 reported Johnson and Watson to JetBlue in Boston, while Jane Doe #2 did not report the incident at all; and JetBlue's investigation occurred in Boston), based on the alleged conduct of Kentucky and Virginia residents which purportedly occurred in Puerto Rico. There is nothing linking this action to New York other than the location of JetBlue's corporate headquarters and Plaintiffs' counsel's offices – neither of which is a proper basis for venue. Therefore, under 28 U.S.C. § 1406(a), the matter *must* be dismissed; or, *and only if it would serve the interests of justice*, transferred to a proper venue.

Here, transfer will not serve the interests of justice because Plaintiffs did not innocently lay venue in the wrong Court, but instead purposefully engaged in improper forum-shopping. Indeed, Plaintiffs' Amended Complaint – just like the original Complaint – sets forth a number of demonstrably false allegations in a transparent attempt to link their claims to New York. Plaintiffs should not be rewarded for engaging in such improper litigation tactics, which have forced Defendants to incur unnecessary attorneys' fees and wasted this Court's resources.

For instance, in both the Complaint and Amended Complaint, Plaintiffs falsely allege that "a substantial part of the events giving rise to this action" occurred in New York; however, as detailed above, all of the alleged events in this case occurred in either Boston or San Juan. Moreover, in both pleadings, Plaintiffs falsely allege that, upon their return from Puerto Rico,

they reported Johnson and Watson's alleged conduct to JetBlue's "corporate headquarters in New York"; again, as noted above, this is simply not true. Now, in the Amended Complaint, Plaintiffs allege for the first time that "decisions" about sexual harassment complaints "stem" from JetBlue's "corporate headquarters in New York" and that JetBlue has a "pattern and practice" of ignoring such complaints, but fail to provide any specific factual details to support these conclusory allegations. To the contrary, when pressed for the factual basis for these allegations during a recent telephonic meet-and-confer, Plaintiffs' counsel admitted that they were not based on personal knowledge, but instead were alleged upon information and belief.

Nonetheless, even if there was a colorable basis for venue in this Court, the case should be transferred to the District of Massachusetts or the District of Puerto Rico pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses. Should this matter survive the pleadings stage, a substantial portion of the discovery process will revolve around Boston-based witnesses and documents; alternatively, discoverable material and witnesses may be located in or around San Juan, where the alleged events giving rise to Plaintiffs' claims transpired.

However, should the Court decline to dismiss or transfer for improper venue, Plaintiffs' Amended Complaint should be dismissed as against JetBlue pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiffs' claims fail as a matter of law for the following reasons:

First, Plaintiffs' Title VII claims fail because they have not been subjected to any adverse employment actions – *Plaintiffs remain employed at JetBlue without any change to the terms or conditions of their employment.* And, to the extent Plaintiffs seek to recover against JetBlue on a hostile work environment theory of discrimination based on Johnson and Watson's alleged conduct in Puerto Rico, Plaintiffs' claims fail because JetBlue cannot be held liable for the

alleged off-premises conduct of off-duty non-supervisory employees of which JetBlue could not have had – and is not alleged to have had – any prior notice.

Second, Plaintiffs' NYSHRL and NYCHRL claims fail for the same reasons as their Title VII claims, and also because it is well established that such claims cannot be asserted by non-residents unless they can demonstrate that the purportedly discriminatory acts at issue had an impact in New York State or City – which Plaintiffs do not allege, and plainly cannot show.

Third, Plaintiffs' tort claims fail not only because they are improperly duplicative of their employment discrimination claims, but also because Plaintiffs do not plausibly allege that JetBlue intentionally or negligently caused them any harm, and cannot state any basis to hold JetBlue liable for Johnson and/or Watson's alleged conduct on a theory of respondeat superior.

Finally, Plaintiffs' assorted Puerto Rico law claims fail as a matter of law for a number of reasons, including many of the same reasons discussed above.

Given the foregoing, Plaintiffs' Amended Complaint against JetBlue merits dismissal in its entirety; alternatively, at a minimum, the matter should be transferred to a proper venue.

## II.    FACTUAL BACKGROUND

In both the Complaint and Amended Complaint, Plaintiffs allege the following:

JetBlue is a Delaware corporation which is headquartered in Long Island City, New York. (Compl. ¶ 11; Am. Compl. ¶ 17; Fiske Decl. ¶ 3.)

Plaintiffs are *currently employed* JetBlue Flight Attendants who, during the relevant time period, were based in Logan International Airport in Boston, Massachusetts ("BOS"). (Conf. Tr. 8:13-25; Fiske Decl. ¶ 8.) Jane Doe #1 resides in Utah, and Jane Doe #2 resides in Texas. (Compl. ¶¶ 10, 13; Am. Compl. ¶¶ 10, 14.)

Johnson and Watson are currently employed JetBlue Pilots who are also based in BOS. (Compl. ¶ 29; Am. Compl. ¶¶ 19-20; Fiske Decl. ¶ 13.) Johnson resides in Kentucky, and Watson resides in Virginia. (Conf. Tr. 9:4-18; 10:11-17.)

Although they were all BOS-based JetBlue employees at all times relevant to this action, Plaintiffs acknowledge that they did not know Johnson or Watson and do not allege that they ever worked together at any time. (Compl. ¶¶ 20, 42; Am. Compl. ¶¶ 24, 51.)

On or about May 9, 2018, Plaintiffs worked a flight from Ronald Reagan Washington National Airport in Washington D.C. to Luis Muñoz Marín International Airport in San Juan, Puerto Rico. (Compl. ¶¶ 17, 39; Am. Compl. ¶¶ 21, 48.) Plaintiffs arrived in San Juan at approximately 1:00 p.m., and did not have to work another flight until the next morning, when they were scheduled to fly to Newark, New Jersey. (Compl. ¶¶ 17, 24-25, 39, 46; Am. Compl. ¶¶ 21, 28, 48, 55.) After Plaintiffs checked into their hotel, they changed their clothes and then went to the beach with another flight attendant ("Jane Doe #3") to relax. (Compl. ¶¶ 18, 40; Am. Compl. ¶¶ 22-23, 49-50.) Like Plaintiffs, Jane Doe #3 is based in BOS, and, upon information and belief, resides in Brighton, Massachusetts. (Fiske Decl. ¶ 12.)

At the beach, Plaintiffs and Jane Doe #3 "found some chairs and set up camp, where they schmoozed, and relaxed with drinks they had prepared." (Compl. ¶¶ 19, 41; Am. Compl. ¶¶ 23, 50.) Later that day, Plaintiffs and Jane Doe #3 noticed Johnson and Watson taking beer cans out of a bag. (Compl. ¶¶ 20-21, 42-43; Am. Compl. ¶¶ 24, 51.) Plaintiffs initiated a conversation with Johnson and Watson, during which they learned that Johnson and Watson were JetBlue Pilots. (Compl. ¶¶ 20, 42; Am. Compl. ¶¶ 24, 51.) Plaintiffs and Jane Doe #3 then drank from Johnson's beer can. (Compl. ¶¶ 21, 43; Am. Compl. ¶¶ 25, 52.) Plaintiffs allege that they do not

recall with specificity the rest of the night of May 9, 2018, which Plaintiffs claim was the result of an unidentified drug in the beer can. (Compl. ¶¶ 21-23, 44-46; Am. Compl. ¶¶ 25-27, 52-53.)

According to Jane Doe #1, her next memory is being in bed with Johnson and Jane Doe #3 while Johnson vaginally penetrated her and Jane Doe #3. (Compl. ¶ 23; Am. Compl. ¶ 27.) According to Jane Doe #2, her next memory is being in a hotel elevator and then vomiting throughout the night. (Compl. ¶¶ 44-45; Am. Compl. ¶ 53-54.) Jane Doe #2 does not allege that Johnson or Watson sexually assaulted her. (Compl. ¶ 45; Am. Compl. ¶ 54.)

The next morning, on or about May 10, 2018, Plaintiffs worked the flight from San Juan to Newark despite feeling ill. (Compl. ¶¶ 24, 46; Am. Compl. ¶¶ 28, 55.) On or about May 11, 2018, upon arriving home in Utah, Jane Doe #1 alleges that she went to a hospital and was subsequently advised that she had contracted human papillomavirus, which she claims she did not have prior to the trip to San Juan and attributes to Johnson. (Compl. ¶¶ 30-31; Am. Compl. ¶¶ 32, 34.) Jane Doe #1 also alleges that the hospital reported the purported incident to Utah police, who prepared a report. (Compl. ¶ 28; Am. Compl. ¶ 32.)

Plaintiffs both claim that they then reported the alleged May 9, 2018 incident with Johnson and Watson to JetBlue's "corporate headquarters in New York." (Compl. ¶¶ 29, 50; Am. Compl. ¶¶ 33, 59.) However, in truth, only Jane Doe #1 reported the alleged incident, and she did so to fellow BOS-based employees. (Fiske Decl. ¶ 17.) Meanwhile, Jane Doe #2 did not bring the alleged incident to JetBlue's attention until she was contacted by fellow BOS-based JetBlue employees following Jane Doe #1's complaint. (Fiske Decl. ¶ 26.) Thereafter, BOS-based JetBlue employees conducted an investigation into Jane Doe #1's allegations, during which the in-person interviews of Plaintiffs, Jane Doe #3, Johnson, and Watson were all performed in BOS. (Fiske Decl. ¶ 25.) Accordingly, all the relevant, non-privileged documents in

this case were created and have been maintained electronically by BOS-based JetBlue employees. (Fiske Decl. ¶ 27.)

Both Plaintiffs remain employed with JetBlue and have continued working since the alleged May 9, 2018 incident, and JetBlue has not changed any of the terms and/or conditions of their employment. (Fiske Decl. ¶ 28.)

In the Amended Complaint, Plaintiffs further allege, for the first time, and without any specific factual support, that (1) JetBlue "failed to take any corrective action" in response to their report against Johnson and Watson, and that, as a result, Plaintiffs have taken steps to reduce the likelihood of potentially seeing them at work or during layovers, *see* Am. Compl. ¶¶ 37-42, 60-63; (2) JetBlue's "decisions with respect to employee sexual assault and/or sexual harassment complaints stem from their corporate headquarters located in New York" and that JetBlue "maintains a pattern and practice stemming from their corporate headquarters located in New York of routinely ignoring employee complaints concerning sexual assault and/or sexual harassment," *see id.* ¶ 18; (3) Plaintiffs fly through New York airports two or three times per month in connection with their employment at JetBlue, *see id.* ¶¶ 12, 16; and (4) since the alleged incident in Puerto Rico, Jane Doe #1 has transferred from BOS to John F. Kennedy Airport in New York ("JFK"), *see id.* ¶ 12.

## III.    PROCEDURAL POSTURE

Plaintiffs commenced this action in the Eastern District of New York on or about March 18, 2019. *See* Dkt. Entry No. 1. On May 6, 2019, JetBlue filed correspondence with the Court in which it requested a pre-motion conference in connection with its anticipated motion to dismiss for improper venue; or, in the alternative, to transfer for the convenience of the parties and witnesses. *See* Dkt. Entry No. 8. On June 20 and June 21, 2019, Johnson and Watson,

respectively, also requested a pre-motion Court conference in connection with anticipated motions to dismiss for, *inter alia*, lack of personal jurisdiction. *See* Dkt. Entry Nos. 14-15.

On June 25, 2019, the parties appeared at a pre-motion conference. Both in their pre-motion letters and at the conference, Defendants' counsel specifically identified the deficiencies in Plaintiffs' Complaint and articulated the bases for their anticipated motions. Defendants' counsel also stated that, if the Court declined to dismiss or transfer the case for the reasons identified in their pre-motion letters, they intended to move to dismiss on substantive grounds under Fed. R. Civ. P. 12(b)(6). (Conf. Tr. 17:8-13.) In response, Judge Garaufis indicated that Defendants should set forth *all* of their arguments – including those under Fed. R. Civ. P. 12(b)(6) – in their initial motion papers. (Conf. Tr. 17:14-18:2.)

Meanwhile, Plaintiffs' counsel advised the Court that their "intention is to amend the Complaint," but nonetheless would not do so until after Defendants filed their respective motions to dismiss. (Conf. Tr. 11:15-17.) In response, Judge Garaufis instructed Plaintiffs that they "should do it [amend] before they [Defendants] move so that I am not doing this twice." (Conf. Tr. 22:9-17.) Judge Garaufis further directed Plaintiffs that the Court "was [not] going to sit around and play ping pong over this Complaint"; that "[i]f [Plaintiffs] have a reason to amend [their] Complaint, do it now so the other side will have everything in front of them"; and "[if] it is something that you know now that you can do to remedy a weakness in your Complaint you should make the filing promptly." (Conf. Tr. 22:18-23:3.) Thereafter, Plaintiffs' counsel responded that its "only concern is amending to correct alleged deficiencies…won't address additional arguments that can be corrected via amendment in their [Defendants'] substantive motions" which were not set forth in Defendants' pre-motion conference letters. (Conf. Tr. 23:6-

15.) Judge Garaufis responded that the Court had already "covered that" issue, and proceeded to schedule motion practice. (Conf. Tr. 23:16-24:2.)

Following the conference, in a good-faith effort to avoid unnecessary motion practice, on July 31, 2019, Defendants jointly wrote to Plaintiffs' counsel specifically setting forth all of their substantive grounds for dismissal of Plaintiffs' Complaint, and requesting that Plaintiffs either withdraw their claims or amend the Complaint before the deadline for Defendants' motions to dismiss. (A copy of this correspondence is attached hereto as Exhibit "C.")

On August 7, 2019, Plaintiffs responded to Defendants' July 31st joint letter by claiming that "Plaintiffs are under no obligation to amend in advance of Defendants' motion practice" and would not file an Amended Complaint unless and until served with motion papers. Plaintiffs' counsel also falsely claimed for the first time that they previously "gave Defendants multiple opportunities to view their Amended Complaint prior to filing their motions provided that Defendants stipulate that Plaintiffs still maintain their amendment as of right after Defendants file their motions." (A copy of this correspondence is attached hereto as Exhibit "D.")

On August 14, 2019, Defendants responded to Plaintiffs' August 7th letter by (1) citing authority demonstrating that Plaintiffs' counsel *did* have an affirmative responsibility to amend to correct the factual misrepresentations and withdraw the baseless legal claims set forth in the Complaint; (2) requesting a copy of the Amended Complaint referenced by Plaintiffs in their August 7th correspondence; and (3) proposing the parties enter into the following stipulation: if Plaintiffs agreed to promptly file an Amended Complaint, then Defendants would agree not to oppose any request by Plaintiffs to seek leave for further amendment so long as Plaintiffs' grounds for doing so were not related to those deficiencies previously identified by Defendants. (A copy of this correspondence is attached hereto as Exhibit "E.")

On August 15, 2019, Plaintiffs' counsel called the undersigned counsel for JetBlue and advised that (1) they had not actually prepared an Amended Complaint yet, and that Defendants had misunderstood their August 7th correspondence; (2) amendment was proper to address some of the issues in the Complaint, and Plaintiffs intended to amend when and if they received Defendants' motion papers; and (3) they would not agree to Defendants' proposed stipulation unless Defendants agreed to consent to further amendment by Plaintiffs on any grounds at all, even as to those deficiencies already identified by Defendants. Notably, Plaintiffs' counsel also acknowledged that Plaintiffs' allegation that they had been "constructive[ly] discharge[d]" was not true, *see* Compl. ¶¶ 38, 56, 72, but that it was "standard" for counsel to include such allegations in cases in which plaintiffs were still employed so that counsel would not need to seek leave to amend should those plaintiffs later resign or quit.

On August 20, 2019, JetBlue advised Plaintiffs that, despite their best efforts to avoid unnecessary motion practice, they would be proceeding accordingly given Plaintiffs' refusal to amend. (A copy of this correspondence is attached hereto as Exhibit "F.")

On September 6, 2019, JetBlue timely served Plaintiffs with its September 6, 2019 Motion To Dismiss Plaintiffs' Complaint; Or, In The Alternative, To Transfer Venue (the "Motion to Dismiss or Transfer"). (A copy of the memorandum of law in support thereof is attached hereto as Exhibit "G.") Johnson and Watson also served their motion papers on Plaintiffs on September 6th.

On September 24, 2019, Plaintiffs filed the Amended Complaint.[3] *See* Dkt. Entry No. 20.

On October 4, 2019, the undersigned counsel for JetBlue conducted a telephonic meet-and-confer with Plaintiffs' counsel regarding its anticipated motion. During this call, Plaintiffs'

---

[3] On September 24, 2019, Plaintiffs also filed – in plain contravention of Judge Garaufis' Individual Rule III(B) – a "Memorandum Of Law And Affirmation In Opposition To Defendant JetBlue Airways Corporation, Defendant Eric Johnson And Defendant Dan Watson's Respective Motions To Dismiss." *See* Dkt. Entry No. 21.

counsel clarified that all of Plaintiffs' new allegations concerning the involvement of JetBlue's corporate headquarters in the Amended Complaint are not based on personal knowledge, but are intended to be alleged "upon information and belief." Plaintiffs' counsel further directed the undersigned to the very first, unnumbered paragraph in the Amended Complaint, which appears to state that *every single allegation in the Amended Complaint is alleged upon information and belief.* (Am. Compl. (Plaintiffs…hereby complains [*sic*] of defendants…upon information and belief, as follow [*sic*]:").) When the undersigned requested clarification as to which paragraphs of the Amended Complaint are alleged on personal knowledge as opposed to mere information and belief, Plaintiffs' counsel simply described the allegations in the Amended Complaint as a mixture of both, and stated that he could not further elaborate.

On October 8, 2019, JetBlue filed a second pre-motion letter setting forth all its anticipated grounds for motion practice. *See* Dkt. Entry No. 23. The Court subsequently set a briefing schedule for the instant Motion. *See* Dkt. Entry dated Oct. 9, 2019.

## IV.     LEGAL STANDARD

Fed. R. Civ. P. 12(b)(3) provides for dismissal of a complaint for improper venue. On such a motion, "the plaintiff bears the burden of establishing that venue is proper." *Cold Spring Harbor Lab. v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 551 (E.D.N.Y. 2011) (internal citations omitted); *see also Zaltz v. JDATE*, 952 F. Supp. 2d 439, 447 (E.D.N.Y. 2013) ("To survive a Rule 12(b)(3) motion to dismiss, the plaintiff has the burden of pleading venue."). *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 447 (E.D.N.Y. 2013). On a motion to dismiss for improper venue, the Court may consider evidence outside of the pleadings. *See Zaltz*, 952 F. Supp. 2d at 447.

Fed. R. Civ. P. 12(b)(6) provides for dismissal of a complaint which fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must plead sufficient factual allegations in the complaint to "state a claim [for]

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Importantly, "pleading facts that are 'merely consistent with a defendant's liability' is insufficient." *Pungitore v. Barbera*, 506 F. App'x 40, 42 (2d Cir. 2012) (internal citations omitted). To survive dismissal, a plaintiff must assert factual allegations sufficient to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Generally, on a motion to dismiss, although a plaintiff gets the benefit of all reasonable inferences, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See Smith v. Reg'l Plan Ass'n, Inc.*, 10-cv-5857, 2011 WL 4801522, at *3 (S.D.N.Y. Oct. 7, 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[V]ague, conclusory pleadings are insufficient to withstand a motion to dismiss a complaint for failure to state a claim upon which relief may be granted." *Saidin v. New York City Dep't of Educ.*, 498 F. Supp. 2d 683, 688 (S.D.N.Y. 2007).

## V.    ARGUMENT

### A.    Plaintiffs' Amended Complaint Should Be Dismissed For Improper Venue.

#### 1.    Under Title VII's special venue provision, this case should have been commenced in either the District of Massachusetts or District of Puerto Rico.

Just as they did in the first Complaint, Plaintiffs again disingenuously claim that "[v]enue is proper in this court, as a substantial part of the events giving rise to this action arose in Queens County, within the Eastern District of New York, as well because the Defendants reside within New York, and Defendant JETBLUE is incorporated in Queens County within the Eastern District of New York." (Compl. ¶ 8; Am. Compl. ¶ 8.) However, as Plaintiffs are and have been well aware, these allegations are both demonstrably false and legally meritless. Plaintiffs therefore plainly cannot satisfy their burden to establish that venue is proper in this Court.

13

First, these allegations represent a bold-faced misrepresentation transparently designed to lay venue in an improper district. Indeed, all of the alleged unlawful actions in this case took place in either Boston or San Juan, not Queens County (*see* Section II, *supra*); neither Johnson nor Watson reside in New York (Conf. Tr. 9:4-18; 10:11-17; Am. Compl. ¶¶ 19-20); and JetBlue is incorporated in the State of Delaware, not New York (Fiske Decl. ¶ 3).

Similarly, Plaintiffs also falsely claim – again – that (1) Jane Doe #1 reported the alleged assault "at [JetBlue's] corporate headquarters in New York" (Am. Comp. ¶ 33) (in fact, she made the report in BOS to BOS-based JetBlue employees (Fiske Decl. ¶ 17)); and (2) Jane Doe #2 reported the alleged attempted assault "in [JetBlue's] New York headquarters" (Am. Comp. ¶ 59) (in fact, she did not make any report to JetBlue until she was contacted by BOS-based JetBlue employees following Jane Doe #1's complaint (Fiske Decl. ¶ 25)).

Now, in a further improper effort to link this case to New York, Plaintiffs allege for the first time that "decisions" about sexual harassment complaints "stem" from JetBlue's "corporate headquarters in New York" and that JetBlue has a "pattern and practice" of ignoring such complaints. (Am. Comp. ¶ 18.) However, these allegations are plainly too vague, conclusory, and speculative to satisfy Plaintiff's burden to establish venue in this Court. *See, e.g.*, *Aguilar v. Immigration & Customs Enf't Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 816 (S.D.N.Y. 2011); *see also Cook v. UBS Fin. Servs., Inc.*, No. 05-cv-8842, 2006 WL 760284, at *4 (S.D.N.Y. Mar. 21, 2006) (transferring action from New York, where defendant was headquartered, to Maryland, where plaintiffs were employed, on grounds that plaintiffs had "presented no such evidence of control or decisionmaking by [defendant's] New York headquarters"). Indeed, during the parties' recent meet-and-confer, Plaintiffs' counsel tellingly acknowledged that these allegations are not based on Plaintiffs' personal knowledge, but are

instead alleged upon information and belief.[4] Accordingly, Plaintiffs' allegations about the purported participation of JetBlue's corporate headquarters in the handling of sexual harassment complaints are not plausibly pleaded and therefore not entitled to the assumption of truth typically accorded on a motion to dismiss. *See, e.g.*, *Haggood v. Rubin & Rothman, LLC*, No. 14-cv-34, 2014 WL 6473527, at \*12 (E.D.N.Y. Nov. 17, 2014). Plaintiffs' new allegations therefore provide no further factual basis for venue in this Court.

Second, there is no legal basis for venue in this Court, and Plaintiffs cannot meet their burden to show otherwise. Indeed, "[w]here a complaint alleges multiple claims, the plaintiff must establish that venue is proper as to each individual claim pled." *Al-Kaysey v. L-3 Servs. Inc.*, No. 11-cv-6318, 2013 WL 5447686, at \*6 (E.D.N.Y. Sept. 27, 2013).

In purporting to state the basis for venue in this Court, Plaintiffs invoke the language of the general venue statute, 28 U.S.C. § 1391. *See* § 1391(b)(1)-(2) ("A civil action may be brought in…a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located…[or] a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"). With respect to their non-federal claims, Plaintiffs' reliance on § 1391 is appropriate, although their conclusion that venue is proper in this Court is not. Neither Johnson nor Watson reside in New York, so the case may not

---

[4] Based on the face of the Amended Complaint, it appears that *every single allegation is alleged upon information and belief*. (Am. Compl. (Plaintiffs…hereby complains [*sic*] of defendants…upon information and belief, as follow [*sic*]:").) Further, Plaintiffs' counsel has refused to identify which paragraphs are alleged upon Plaintiffs' personal knowledge and which are alleged upon information and belief. Accordingly, Plaintiffs' counsel is plainly abusing a party's limited right to plead facts upon information and belief in its effort to prevent the dismissal or transfer of this action. *See Munoz-Nagel v. Guess, Inc.*, No. 12-cv-1312, 2013 WL 1809772, at \*7 (S.D.N.Y. Apr. 30, 2013) ("Although Plaintiff is entitled to plead facts upon information and belief, she has failed to accompany her allegations with respect to her age discrimination claim with a 'statement of the facts upon which the belief is founded.'"); *see also Kajoshaj v. City of New York*, No. 11–cv–4780, 2013 WL 249408, at \* 2 (E.D.N.Y. Jan. 23, 2013), *aff'd*, 543 F. App'x 11 (2d Cir. Oct. 15, 2013). **This pleading deficiency alone is grounds to dismiss the Amended Complaint.** *See, e.g.*, *Haggood v. Rubin & Rothman, LLC*, No. 14-cv-34, 2014 WL 6473527, at \*12 (E.D.N.Y. Nov. 17, 2014) ("Since all of plaintiffs' allegations, made "upon information and belief," pertaining to the treatment non-African American employees received at R & R are entirely conclusory, they are not entitled to the assumption of truth and are insufficient to withstand a motion to dismiss."); *Munoz-Nagel v. Guess, Inc.*, No. 12-cv-1312, 2013 WL 1809772, at \*7 (S.D.N.Y. Apr. 30, 2013).

be properly venued here under § 1391(b)(1); and all of the alleged events giving rise to Plaintiffs' non-federal claims occurred either in Massachusetts or Puerto Rico, so the action may also not be properly venued here under § 1391(b)(2). In short, there is not even a colorable basis to venue Plaintiffs' non-federal claims in this Court.

Plaintiffs' federal law claims should also not be litigated in New York, although for a different reason. Specifically, the Amended Complaint conveniently omits any reference to Title VII's special venue provision – 42 U.S.C. § 2000e-5 – which, as Plaintiffs' counsel is well aware, overrides the general venue statute. *See, e.g.*, *Pardy v. Gray*, No. 06-cv-6801, 2007 WL 1825200, at *3 (E.D.N.Y. June 22, 2007) ("The special venue statute contained in Title VII controls venue under the act to the exclusion of the general venue statute."). Under § 2000e-5(f)(3), venue may only be properly laid in one of three possible districts: (1) where the unlawful employment practice is alleged to have been committed; (2) where the employment records relevant to such practice are maintained and administered; or (3) where plaintiff would have worked but for the alleged unlawful employment practice.[5] *See id.*

The second and third options can be disregarded – Plaintiffs' Amended Complaint does not contain any allegations about the location of any relevant employment records (which, in fact, were created and are maintained by BOS-based JetBlue employees (Fiske Decl. ¶ 27)); and, Plaintiffs remain employed at JetBlue (Fiske Decl. ¶ 28). Accordingly, the only judicial district in which Plaintiffs' Title VII claims may be properly litigated is the one in which an unlawful employment practice is alleged to have been committed – here, either the District of Puerto Rico

---

[5]     Title VII's special venue provision also allows, in "rare case[s]," for an action to be venued in the district in which the employer has its principal place of business. *Arrocha v. Panama Canal Comm'n*, 609 F. Supp. 231, 234 (E.D.N.Y. 1985). However, it is well established that "the judicial district where the employer's principal office is located is a proper place for venue only if venue cannot be laid in one of the other three possible districts specified in the statute." *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993). Here, because venue could have properly been laid in at least one of the three other possible districts set forth above (*i.e.*, the District of Massachusetts or the District of Puerto Rico), Plaintiffs may not rely on this "catch-all" provision to claim venue is proper in this district.

(where the alleged assault took place, and where potential witnesses, physical and/or testimonial evidence, and/or other evidence are likely to be found), or the District of Massachusetts (where all of the relevant actions following the alleged assault in Puerto Rico took place, including Jane Doe #1's reporting of the alleged assault, and JetBlue's investigation into her complaint).

Notwithstanding the plain and unambiguous language of Title VII's special venue provision, Plaintiffs futilely attempt to lay venue in this Court by alleging for the first time in the Amended Complaint that they occasionally travel through New York in connection with their job duties for JetBlue, *see* Am. Comp. ¶¶ 12, 16, and that, since the alleged events in Puerto Rico, Jane Doe #1 has transferred from BOS to JFK, *see id.* ¶ 12. However, these allegations are wholly irrelevant to the question of whether venue is proper in this Court under the strictures of § 2000e-5(f)(3) (or § 1391). Further, accepting Plaintiffs' suggestion that simply traveling through a jurisdiction is sufficient to lay venue there would theoretically allow this case – which involves Flight Attendants, who regularly fly through and have layovers in dozens of jurisdictions across the country – to be properly venued in dozens of Districts. This conclusion is plainly erroneous. Indeed, it cannot plausibly be disputed that this case should be venued anywhere but the District of Massachusetts or the District of Puerto Rico.

   **2.    Because Plaintiffs intentionally commenced this case in the wrong Court, their Amended Complaint should be dismissed.**

Under 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district *shall dismiss*, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.* (emphasis added). Here, the Court should dismiss Plaintiffs' Amended Complaint because transferring the action would not serve the interest of justice.

17

The Supreme Court has explained that "Congress enacted § 1406 to avoid 'the injustice which ha[s] often resulted to plaintiffs from dismissal of their actions merely because they had made an erroneous guess with regard to the existence of some elusive fact of the kind upon which venue provisions often turn.'" *Spar, Inc. v. Info. Res., Inc.*, 956 F.2d 392, 394 (2d Cir. 1992) (quoting *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962)). Accordingly, courts in this Circuit have repeatedly refused to transfer cases – and instead dismissed them – where plaintiff's improper choice of venue was not innocently made, but calculated and/or frivolous. *See, e.g.*, *Blakely v. Lew*, 607 F. App'x 15, 18 (2d Cir. 2015) (affirming dismissal of case where district court "conclude[ed] that appellants' attempt to bring their case in the Southern District of New York constituted impermissible forum shopping"); *Spar, Inc.*, 956 F.2d at 394 ("[A]llowing a transfer in this case would reward plaintiffs for their lack of diligence in choosing a proper forum and thus would not be in the interest of justice."); *Rogers v. Clinton*, No. 519-cv-175, 2019 WL 3469462, at *4 (N.D.N.Y. Apr. 1, 2019), *report and recommendation adopted sub nom.*, 2019 WL 3454099 (N.D.N.Y. July 31, 2019) ("[T]he complaint is so devoid of facts that would establish this court's jurisdiction over anything, transferring the case to any other district would not be in the interests of justice."); *RLP Ventures LLC v. All Hands Instruction NFP*, No. 18-cv-3988, 2019 WL 1316030, at *7 (S.D.N.Y. Mar. 22, 2019) (same). Put simply, dismissal under § 1406 is "warranted where the plaintiff knowingly chooses the wrong forum or otherwise exhibits a lack of diligence." *Feldman v. L & M Mowing, Inc.*, 1999 WL 284983 at *3 (E.D.N.Y. 1999).

Here, Plaintiffs did not simply make an "erroneous guess" in improperly commencing this case in this Court. To the contrary, Plaintiffs are and have been well aware that this case has no factual or legal connection to New York, yet initiated it and have continued to litigate it here anyway – and have repeatedly made a number of false statements to the Court in an effort to do

so. Such conduct is plainly sanctionable[6], and should not be rewarded.[7] *See, e.g.*, *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008) ("Rule 11(c) of the Federal Rules of Civil Procedures allows the court to sanction a party, if the court determines that the party has violated Rule 11(b) by making false, misleading, improper, or frivolous representations to the court.").

Finally, dismissal rather than transfer is appropriate for another reason – as set forth in Section V(C)(1)-(5), *supra*, and, upon information and belief, as detailed in Johnson and Watson's anticipated motions, Plaintiffs' claims fail as a matter of law. Indeed, courts in this Circuit have held that, in deciding whether to dismissal or transfer under § 1406, they may "take 'a peek at the merits'" on the grounds that "[c]ourts should not 'waste judicial resources by

---

[6]     Sanctions are particularly appropriate in this case because Plaintiffs' counsel has been on notice of all of the deficiencies in the Complaint – including but not limited to improper venue – but nonethleass failed to meaningfully address any of them in the Amended Complaint, which has needlessly required the parties and the Court to further waste time and resources. *See, e.g.*, *Chien v. Skystar Bio Pharm. Co.*, 256 F.R.D. 67, 73 (D. Conn. 2009), *aff'd*, 378 F. App'x 109 (2d Cir. 2010) (awarding sanctions where "[plaintiff's counsel] was on notice that the original complaint contained serious deficiencies and that he should either work to address those deficiencies or withdraw the complaint….[but i]nstead, he filed an amended complaint that was basically identical to the original complaint….[and h]e made no effort whatsoever to address the defects to which Defendants had alerted him.").

[7]     It appears that Plaintiffs' counsel has a pattern of improperly commencing actions in New York – where its offices are based – and citing the wrong venue provision in an effort to dupe the defendants and/or the courts. Indeed, this is not the first time Plaintiffs' counsel has brought an employment discrimination action against JetBlue in the Eastern District of New York without any basis to do so. In *Peterson v. JetBlue Airways Corporation*, No. 16-cv-04607-DLI-RLM (E.D.N.Y. Aug. 18, 2016), counsel represented a Tennessee resident who was briefly employed by JetBlue in Florida and challenged purported discriminatory conduct which allegedly occurred in Florida. *See* Dkt. Nos. 1, 9. In stating the basis for venue in New York, Plaintiffs' counsel expressly (and incorrectly) invoked § 1391, and – just as in this case – conveniently (or unknowingly) ignored Title VII's special venue provision. *See* Dkt. No. 1. When JetBlue moved to transfer the case, the Honorable Chief Judge Dora Lizette Irizarry denied plaintiff leave to amend, opining that "the Court does not believe that 'justice so require[d]'" it, and subsequently transferred the case to the Middle District of Florida. *See* Dkt. Entries dated May 10, 2017 and Sept. 21, 2017.
        Additionally, Plaintiffs' counsel has also improperly commenced at least one employment discrimination action in the Southern District of New York against other defendants by ignoring Title VII's special venue provision, *see Fullwood v. SDH Servs. W., LLC*, No. 16-CV-1 (RA), 2016 WL 3951186, at *1 (S.D.N.Y. July 20, 2016) (finding that "the Southern District of New York is an improper venue for Plaintiff's Title VII claims" and granting motion to transfer), and is presently litigating yet another venue challenge in the Southern District of New York in which Plaintiffs' counsel yet again incorrectly cites to § 1391 despite asserting Title VII claims, *see Lapushner v. Admedus Ltd.* No. 18-cv-11530-ALC (S.D.N.Y. Dec. 12, 2018). Indeed, in a filing as recent as August 13, 2019 – *months after JetBlue put Plaintiffs' counsel on notice of Title VII's special venue provision* – Plaintiffs' counsel filed papers in that case wrongly arguing that "a substantial part of the events giving rise to the claims alleged in this case occurred in the Southern District of New York, making the Southern District of New York the proper venue for the action." *See* Dkt. Entry No. 71, at p. 12.

transferring a case that is clearly doomed.'" *Dudla v. Jordan*, No. 14-cv-0889 LEK/RFT, 2015 WL 403079, at *7 (N.D.N.Y. Jan. 29, 2015) (internal citations omitted.) (compiling cases).

      **B.**      **Alternatively, Plaintiffs' Amended Complaint Should Be Transferred For The Convenience Of The Parties And Witnesses.**

Alternatively, should the Court decide that venue for Plaintiffs' claims is proper in the Eastern District of New York and dismissal inappropriate notwithstanding Plaintiffs' affirmative misrepresentations, the case should nonetheless be transferred to the District of Massachusetts for the convenience of the parties and witnesses pursuant to 28 U.S.C. § 1404.

In examining whether transfer is proper under 28 U.S.C. § 1404, courts engage in a two-part test. *See Neil Bros. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 327 (E.D.N.Y. 2006).

First, the "question is whether the action 'might have been brought' in the proposed transferee forum." *Id.* (internal citations omitted). As discussed in Sections II and V(1), *supra*, the answer to this question is clear: Plaintiffs could have – and should have – commenced this action in the District of Massachusetts or the District of Puerto Rico.

Second, "the Court must determine whether the transfer promotes convenience and justice." *Id.* To make this determination, courts look at a number of factors, including the convenience of the parties; the convenience of the witnesses; the relative means of the parties; the locus of operative facts and relative ease of access to evidence; the availability of process to compel the attendance of unavailable witnesses; the relative means of the parties; the forum's familiarity with governing law; judicial economy and the interests of justice; practical difficulties; and the plaintiff's choice of forum. *See id.* at 327-28; *Chong v. HealthTronics, Inc.*, No. 06-cv-1287, 2007 WL 9735355, at *9 (E.D.N.Y. June 20, 2007). Generally, courts find "the two most important transfer factors" are the convenience of witnesses (particularly nonparty witnesses) and the locus of operative facts. *Tlapanco v. Elges*, 207 F. Supp. 3d 324, 333

(S.D.N.Y. 2016); *Chong*, 2007 WL 9735355, at *10 ("Courts routinely transfer cases to the district where the principal events occurred, and where the principal witnesses are located."); *see also Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 27 (S.D.N.Y. 2016); *see also Neil Bros.*, 425 F. Supp. 2d at 329 ("The convenience of the witnesses is probably the single most important factor in the transfer analysis."). Meanwhile, the plaintiff's choice of forum is not considered an important factor when "[it] is neither the [plaintiff's[ home nor the place where the operative facts of the action occurred." *Tlapanco*, 207 F. Supp. 3d at 333.

Here, these factors strongly weigh toward transfer either to the District of Puerto Rico (where Plaintiffs allege that Johnson and Watson assaulted them) or to the District of Massachusetts (where Plaintiffs, Johnson, and Watson were employed by JetBlue, and where JetBlue's challenged employment actions were made). Other than Plaintiffs' selection of this venue (which should be accorded minimal weight), there is not a single reason why this case – brought by BOS-based JetBlue employees alleging that other BOS-based JetBlue employees assaulted them in Puerto Rico and challenging the employment actions taken by still other BOS-based JetBlue employees – should be litigated in New York.

Indeed, none of the individual parties (Plaintiffs, Johnson, and Watson) or relevant non-party witnesses (*e.g.*, Jane Doe #3; the employees of the San Juan hotel(s) at which Plaintiffs, Johnson, and/or Watson were staying; the BOS-based JetBlue employees who addressed Plaintiffs' reporting of the alleged assault; the employees of the Utah hospital and Utah police department to whom Jane Doe #1 purported reported the alleged assault) reside in New York. (Am. Compl. ¶¶ 10, 14, 19-20, 32, 34; Fiske Decl. ¶¶ 12, 15, 16.) To the contrary, the relevant witnesses are spread among different jurisdictions across the country. However, the majority (if not all) of the principal witnesses are employed and/or reside in Massachusetts, including

Plaintiffs (although Jane Doe #1 recently transferred to JFK), Johnson, Watson, Jane Doe #3, and the BOS-based JetBlue employees with knowledge of the employment actions challenged in this litigation. (Am. Compl. ¶ 12; Fiske Decl. ¶¶ 10, 11, 14.) For that reason, Massachusetts is also the locus of operative facts with respect to Plaintiffs' employment discrimination claims, and it is also where many of the documents relevant to these claims were created and are maintained. (Fiske Decl. ¶¶ 17, 24, 25, 27.)

In sum, much of the discovery relating to Plaintiffs' assault claims – and effectively *all* of the discovery relating to Plaintiffs' employment discrimination claims – will be conducted in Massachusetts, making it the natural judicial district to litigate this case if it is not outright dismissed for the reasons set forth herein.[8]

**C.    Alternatively, Plaintiffs' Amended Complaint Should Be Dismissed As Against JetBlue For Failure To State A Claim.**

**1.    Plaintiffs fail to state a Title VII sex discrimination claim on either a disparate treatment or hostile work environment theory.**

In their Amended Complaint, Plaintiffs vaguely assert a Title VII sex discrimination claim without specifying the basis on which they seek to hold JetBlue liable. (Am. Compl. ¶¶ 69-71.) Nonetheless, under either a theory of disparate treatment or hostile work environment, Plaintiffs' claims fail as a matter of law. *See, e.g.*, *Parra v. City of White Plains*, 48 F. Supp. 3d 542, 553-54 (S.D.N.Y. 2014) (discussing the difference between a "disparate treatment" claim and a "hostile work environment" claim under Title VII, with the former requiring a "tangible,

---

[8]    To the extent Plaintiffs intend to argue that other documents relevant to this action were created and/or are maintained in JetBlue's New York-based headquarters (which they do not either in the Complaint or Amended Complaint), it is irrelevant to the transfer question "given the technological age in which we live, with the widespread use of, among other things, electronic document production." *Farrior v. George Weston Bakeries Distribution, Inc.*, No. 08-CV-2705 JFB WDW, 2009 WL 113774, at *6 (E.D.N.Y. Jan. 15, 2009). Further, all the relevant JetBlue parties and witnesses in this case – Plaintiffs, Jane Doe #3, Johnson, Watson, and the JetBlue employees who investigated Jane Doe #1's complaint – were, at all relevant times, based in Massachusetts; as a result, all the documents relating to this case were therefore created and have been maintained in Massachusetts. (Fiske Decl. ¶ 27.)

'discrete harm[] such as hiring or discharge" and the latter involve an examination of "the 'workplace as a whole'") (internal citations omitted).

a.    <u>Plaintiffs fail to state a disparate treatment discrimination claim.</u>

To state a disparate treatment claim under Title VII, a plaintiff "must allege (i) she is a member of a protected class, (ii) she was qualified for the position she held, (iii) she suffered an adverse employment action, and (iv) the adverse action took place under circumstances giving rise to an inference of discrimination." *Id.* at 553. Here, Plaintiffs do not plausibly allege the third or fourth elements of such a claim.

First, Plaintiffs do not allege any facts giving rise to an inference of discrimination, such as that relevant JetBlue employees made remarks evincing discriminatory animus or that similarly situated male employees were treated more favorably. *See id.; see also Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) ("The *sine qua non* of a gender-based discriminatory action claim under title VII is that the discrimination must be because of sex.") (internal quotation marks omitted). Indeed, the Amended Complaint is bereft of any allegations suggesting that JetBlue harbored any discriminatory animus against Plaintiffs or any other female employees.[9]

Second, Plaintiffs fail to plausibly allege that JetBlue has subjected them to any material adverse employment action, as they remain employed in good standing and have continued working since the alleged incident in Puerto Rico approximately a year and a half ago. (Conf. Tr. 8:13-25; Fiske Decl. 28.) Instead, Plaintiffs allege that JetBlue failed to take appropriate corrective action[10] following that alleged incident, and that, as a result, they have taken steps

---

[9]    To the contrary, the Amended Complaint explicitly alleges that Plaintiffs were treated the same as every other employee who complained of sexual harassment, regardless of sex. (Am. Compl. ¶ 18 (alleging that JetBlue "maintains a pattern and practice…of routinely ignoring *employee* complaints concerning sexual assault and/or sexual harassment.").).

[10]    Tellingly, Plaintiffs do not allege that JetBlue here failed to investigate their specific allegations against Johnson and Watson, but instead speculatively claim, <u>upon information and belief</u>, that JetBlue has a generalized "pattern and practice" of ignoring Crewmember complaints. (Am. Compl. ¶¶ 18, 33.)

23

which they believe make them less likely to encounter Johnson and/or Watson at work, such as "bid[ding] out" of cetain flights, "avoid[ing]" certain layovers and Crewmembers, and not "hav[ing] more than one drink" during layovers . (Am. Compl. ¶¶ 39-42, 62.)

Put simply, Plaintiffs allege that they have voluntarily changed the conditions of their employment because they disagreed with JetBlue's employment decisions – not that JetBlue affirmatively took any material adverse employment action against them based on sex. Such allegations are insufficient to sustain a discrimination claim. Indeed, the law is clear that "[a] plaintiff does not have the right to choose an employer's remedial action." *Paul v. Postgraduate Ctr. for Mental Health*, 97 F. Supp. 3d 141, 176, n. 30 (E.D.N.Y. 2015). Instead, "[t]he appropriateness of an employer's remedial action must be assessed from the totality of the circumstances" – critical context which Plaintiffs do not provide in their Amended Complaint. *Id.* (internal citations omitted).

And, even if such allegations *were* sufficient to represent a material adverse employment action, Plaintiffs' bare allegation that JetBlue failed to take "corrective action" is too vague and conclusory to be afforded the assumption of truth. Rather, it is a mere legal conclusion. *See, e.g.*, *Shepherd v. Fischer*, No. 9:10-cv-1524, 2015 WL 1246049, at *13 (N.D.N.Y. Feb. 23, 2015), *report and recommendation adopted*, 2015 WL 1275298 (N.D.N.Y. Mar. 18, 2015) (finding allegation that "Defendants Artus, Lempke and Fischer, acting alone and/or in conjunction with each other were aware of there being a systematic, gross inadequacies in training as well [as] supervision of subordinates in the use of force, and further failed to take corrective as well as preventative measures, which caused the violation of plaintiff's rights" too "vague and conclusory" to sustain plaintiff's claims).

b.      Plaintiffs fail to state a hostile work-environment claim.

Alternatively, Plaintiffs also fail to plausibly allege a hostile work environment claim of

discrimination under Title VII. To state such a claim, a plaintiff must establish "(1) that the

'workplace was permeated with discriminatory intimidation that was sufficiently severe or

pervasive to alter the conditions of [her] work environment, and (2) that a specific basis exists

for imputing the conduct that created the hostile environment to the employer.'" *Richardson v.

New York State Dep't of Corr. Serv.*, 180 F.3d 426, 436 (2d Cir. 1999). Plaintiffs do not

plausibly plead either of these elements.

i.      *Plaintiffs do not plausibly allege any basis on which to hold
        JetBlue liable for Johnson or Watson's alleged conduct.*

As a preliminary matter, Plaintiffs do not – and cannot – plausibly allege a basis on

which to impute liability on JetBlue. To do so, Plaintiffs must allege either that (1) Johnson

and/or Watson are Plaintiffs' "supervisors" such that vicarious liability attaches to JetBlue; or (2)

JetBlue knew or should have known of Johnson and/or Watson's alleged conduct but failed to

take appropriate corrective action. *See, e.g., Richardson*, 180 F.3d at 441 ("Where the

harassment was done by a co-employee without supervisory authority over the plaintiff, liability

will be imputed to the employer "only if it is negligent, that is, if it either provided no reasonable

avenue for complaint or knew of the harassment but did nothing about it.").

Critically, Plaintiffs do not plausibly allege – and cannot show – that Johnson and/or

Watson are their supervisors such that JetBlue is vicariously liable under Title VII. To the

contrary, courts have repeatedly found that pilots are *not* supervisory employees within the

meaning of Title VII. *See, e.g.*, *Swentek v. USAIR, Inc.*, 830 F.2d 552, 558 (4th Cir. 1987)

("Pilots and flight attendants are attached to different administrative departments within USAIR

and perform under different supervisory chains of command. Pilots do not hire, fire, promote, or

demote flight attendants; they do not determine their work assignments."); *Turner v. Atl. Se. Airlines, Inc.,* No. 1:07-CV-0039, 2008 WL 11319910, at *6 (N.D. Ga. Aug. 7, 2008), *report and recommendation adopted*, 2008 WL 11319982 (N.D. Ga. Nov. 20, 2008), *aff'd*, 352 F. App'x 416 (11th Cir. 2009) ("The parties have not cited, and the Court has not found, any other authority involving pilots and flight attendants where the pilot has been found to be a flight attendant's supervisor."). Further, the Supreme Court has recently made clear that vicarious liability only attaches where the employee has "the power to take tangible employment actions against an employee" i.e., to "hire, fire, demote, promote, transfer, or discipline an employee." *Vance v. Ball State University*, 570 U.S. 421, 431 (2013).

Here, Plaintiffs allege in vague and conclusory fashion that Johnson and Watson "held supervisory authority" over Plaintiffs, but do not provide any support for that proposition – it is a legal conclusion disguised as a factual allegation. (Am. Compl. ¶¶ 19-20.) Indeed, this assertion is contradicted by other allegations in the Amended Complaint, such as Plaintiffs' admission that, prior to the alleged assault, they did not know and had never worked with Johnson and/or Watson. (Am. Compl. ¶ 24.) Plaintiffs also do not allege that they ever worked with Johnson and/or Watson at any time after the alleged assault. Accordingly, Plaintiffs have failed to set forth any specific factual allegations which suggest that Johnson and/or Watson were in any position to take any tangible employment actions against them.

Moreover, Plaintiffs do not plausibly allege any facts suggesting that JetBlue "was negligent in controlling working conditions." *Vance*, 570 U.S. at 424. Plaintiffs do not allege that JetBlue had or should have had any prior knowledge that Johnson and/or Watson were likely to engage in the alleged assault on or about May 9, 2018. Instead, Plaintiffs simply assert that

Plaintiffs reported the alleged assault to JetBlue, but "no corrective action was ever taken against Defendants [Johnson] and [Watson]." (Am. Compl. ¶¶ 33, 59.)

First, as discussed in Section V(C)(1)(a), *supra*, this allegation is too vague and conclusory to sustain Plaintiffs' claim, and the law is clear that "[a] plaintiff does not have the right to choose an employer's remedial action." *Paul*, 97 F. Supp. 3d at 176, n. 30.

Second, Plaintiffs do not allege that JetBlue "did not monitor the workplace, failed to respond to complaints, failed to provide a system for registering complaints, or effectively discouraged complaints from being filed." *Ward v. Shaddock*, No. 14-CV-7660, 2016 WL 4371752, at *10 (S.D.N.Y. Aug. 11, 2016) (granting motion to dismiss hostile work environment claim) (internal citations omitted). To the contrary, Plaintiffs allege that they *did* report the alleged incident to JetBlue (which, as discussed above, is only partially true), and acknowledge that JetBlue *did* investigate, although they apparently disagree with how JetBlue handled its investigation and/or reached its conclusions.

Third, Plaintiffs do not allege that JetBlue "allow[ed] the hostile workplace environment to persist." *Id.* To the contrary, Plaintiffs describe the alleged assault as a singular incident which occurred on or about May 9, 2018, and do not claim that Johnson, Watson, and/or any other JetBlue employee ever acted inappropriately toward them at any time *over the past year and a half Plaintiffs have continued working at JetBlue*.

Put simply, there is no lawful basis to hold JetBlue liable for alleged conduct which, if true, amounts to a private crime – not a violation of Title VII.

ii.   *Plaintiffs do not plausibly allege that their "work environment" was hostile.*

More fundamentally, Plaintiffs' hostile work environment claim fails because they do not plausibly allege that Johnson or Watson's purported conduct occurred in a "work environment."

Indeed, "[g]enerally, an employer is not liable as a matter of law for harassment resulting 'from nonwork-related, off-duty interactions between co-employees because those actions are not part of the work environment.'" *Paul v*, 97 F. Supp. 3d at 175. Only "[u]nder certain 'special… circumstances,' where the nature of the employer's business requires off-duty interactions…or a supervisor uses his authority to compel the victim of harassment to meet outside the office…[may] the harassing acts…be imputed to the employer." *Devlin v. Teachers' Ins. & Annuity Ass'n of Am.*, No. 02-cv-3228, 2003 WL 1738969, at *2 (S.D.N.Y. Apr. 2, 2003); *see also Krause v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 10-cv-2603, 2011 WL 1453791, at *4 (S.D.N.Y. Apr. 13, 2011).

Here, Plaintiffs acknowledge that they had finished their shift on or about May 9, 2018 and had "set up camp" on the beach to "schmooze[]" and "relax[] with some drinks" for the rest of the afternoon/evening, as they did not have another shift until the next day. (Am. Compl. ¶¶ 21-23, 48-50.) Plaintiffs do not allege that JetBlue in any way required or encouraged this conduct. Plaintiffs also do not allege that Johnson and/or Watson leveraged their status as JetBlue Pilots to engage in any improper conduct. In fact, Plaintiffs acknowledge that they had never worked with Johnson and Watson. (Am. Compl. ¶¶ 24, 51.) Plaintiffs further acknowledge that they did not strike up their conversation with Johnson and/or Watson because they recognized them as JetBlue Pilots, but rather because they observed them removing beer cans from a bag on the beach. (Am. Compl. ¶¶ 24, 51.)

In sum, all of these alleged events occurred while Plaintiffs, Johnson, and Watson were off-duty at the beach, and none of these incidents can plausibly be said to be work-related. JetBlue cannot be held liable under such circumstances. *See Devlin*, 2003 WL 1738969, at *2 ("Absent any suggestion that [plaintiff's] presence was the result of [employer] compulsion or

that the event was under [employer's] supervision and control, [employer] cannot be held liable

for what transpired at the off-premises social event."); *see also Duggins ex rel. Duggins v.*

*Steak'N Shake, Inc.*, 3 F. App'x 302, 311 (6th Cir. 2001).

> **2.** **Plaintiffs fail to state a Title VII retaliation claim because they do not plausibly allege, and cannot show, that they have suffered any adverse employment action for engaging in protected activity.**

Plaintiffs also assert a vague, conclusory Title VII retaliation claim which should be

dismissed for the same reason as Plaintiffs' disparate treatment claim – they cannot plausibly

allege that they have suffered any adverse employment action. (Am. Compl. ¶¶ 72-74.)

"To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that

would tend to show that: (1) she participated in a protected activity known to the defendant; (2)

the defendant took an employment action disadvantaging her; and (3) there exists a causal

connection between the protected activity and the adverse action." *Patane*, 508 F.3d at 115.

"[A]s the Supreme Court has warned, '[t]he antiretaliation provision [of Title VII] protects an

individual not from all retaliation, but from retaliation that produces an injury or harm." *Jaeger*

*v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 235 (E.D.N.Y. 2016) (quoting

*Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)).

However, as explained in Section V(C)(1)(a), *supra*, Plaintiffs do not – and cannot –

plausibly allege that JetBlue took any adverse employment action against them whatsoever. To

the contrary, both Plaintiffs have continued working for JetBlue since they made their purported

complaints against Johnson and Watson[11], and the only alleged changes to the terms and/or

---

[11]     Because the Court may take judicial notice of Plaintiffs' counsel's acknowledgement of this fact at the June 25, 2019 conference, the Court need not convert this Motion into a motion for summary judgment. *See Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 75 (S.D.N.Y. 2015)("[M]atters of which the Court takes judicial notice are not considered matters outside the pleadings; the Court may consider them when adjudicating a motion to dismiss without converting the motion to dismiss into a motion for summary judgment."); *Lopez v. Burris Logistics Co.*, 952 F. Supp. 2d 396, 425 (D. Conn. 2013), *on reconsideration* (Sept. 23, 2013) (taking judicial notice of "representations in Defendant's brief" and granting motion to dismiss rather than converting to motion for summary judgment).

conditions of their employment have been self-imposed because they disagree with how JetBlue

handled those purported complaints. Accordingly, Plaintiffs' retaliation claim is meritless.

> **3.**  **Plaintiffs' NYSHRL and NYCHRL claims fail because Plaintiffs do not plausibly allege, and cannot show, that Defendants' alleged discriminatory conduct had any "impact" in New York State or City.**

First, Plaintiffs' NYSHRL and NYCHRL claims fail for the same reasons as their Title

VII claims – that is, they have not plausibly alleged, and cannot show, that JetBlue subjected

them to discrimination based on sex or retaliation based on protected activity, and there is no

basis on which to hold JetBlue liable for Johnson or Watson's alleged actions. *See* Section

V(C)(1)-(2), *supra*; *see also Wojcik v. Brandiss*, 973 F. Supp. 2d 195, 207 (E.D.N.Y. 2013)

("appl[ying] an identical analysis to Plaintiff's Title VII, NYSHRL, and NYCHRL claims").

Moreover, Plaintiffs' NYSHRL and NYCHRL claims should also be dismissed for an

even more fundamental reason – Plaintiffs do not plausibly allege, and cannot show, that any of

the purportedly discriminatory or retaliatory acts alleged in this case had any impact in New

York State or City. *See, e.g.*, *Chau v. Donovan*, 357 F. Supp. 3d 276, 283 (S.D.N.Y. 2019) ("In

order for a nonresident to invoke the protections of the NYSHRL and NYCHRL, she must show

that the discriminatory act had an impact within the boundaries of the State and City,

respectively.'"). As residents of Utah and Texas challenging conduct which allegedly occurred in

Puerto Rico and Boston, Plaintiffs cannot rely on the NYSHRL or NYCHRL. Indeed, even if

Plaintiffs claimed that they "performed some work in New York" and/or that "certain adverse

[employment] actions" were made in New York (which, as discussed above, Plaintiffs do not

plausibly allege), it would be insufficient to establish the requisite "impact" required by law to

sustain these claims. *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 865 (S.D.N.Y. 2013).

**4.      Plaintiffs' tort claims fail because they are improperly duplicative of their discrimination claims, and because they fail as a matter of law.**

Plaintiffs' intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") claims should be dismissed for several reasons.[12]

First, they are improperly duplicative of Plaintiffs' employment discrimination claims under Title VII, the NYSHRL, the NYCHRL, and Puerto Rico Laws 17, 69, 100, and 115. *See Anderson v. Janson Supermarkets, LLC*, 934 N.Y.S.2d 32 (Sup. Ct. 2011) (dismissing IIED claim on grounds that it was "duplicative of the plaintiff's cause of action against [defendant] for hostile work environment [under the NYSHRL] because this claim arises from the same facts"); *see also Virola v. XO Communications, Inc.*, No. 05-cv-5056, 2008 WL 1766601, at *21 (E.D.N.Y. Apr. 15, 2008) ("New York courts do not, as a rule, extend the tort of intentional infliction of emotional distress to employment discrimination claims[.]"); *Maldonado-Catala v. Municipality of Naranjito*, No. 13-cv-1561, 2016 WL 1411355, at *5 (D.P.R. Apr. 11, 2016), *aff'd*, 876 F.3d 1 (1st Cir. 2017) ("Where '[tort] claims are based on the same facts that give rise to asserted causes of action under Puerto Rico's special employment statutes,' the [tort] claims are not cognizable.") (internal citations omitted).

---

[12]      In their Amended Complaint, Plaintiffs do not specify under what jurisdiction's law – New York, Puerto Rico, or Massachusetts – they assert these claims. Under a choice-of-law analysis, Plaintiffs' tort law claims should be evaluated under Puerto Rico law to the extent they are based on the alleged assault in San Juan, and under Massachusetts law to the extent they are based on the challenged employment actions in Boston. *See, e.g.*, *Jacobson v. Fed. Ins. Co.*, No. 95 CIV. 4343 (WK), 1999 WL 893045, at *1 (S.D.N.Y. Oct. 15, 1999) ("For torts, the New York courts follow 'interest analysis,' holding that if the parties are domiciled in different states, then "the law of the situs of the injury generally applies."). However, Plaintiffs do not assert any other Massachusetts state law claims in their Amended Complaint, and appear to separately assert IIED and NIED claims under Articles 1802 and 1803 of the Puerto Rico Civil Code, which are the general tort laws under which plaintiffs typically proceed with such claims in that jurisdiction. *See, e.g.*, *Bonilla-Ramirez v. MVM, Inc.*, No. CV 15-1586, 2017 WL 2712884, at *16 (D.P.R. Mar. 30, 2017), *aff'd*, 904 F.3d 88 (1st Cir. 2018) (dismissing plaintiff's claims "of intentional infliction of emotional distress under Articles 1802 and 1803 of Puerto Rico Civil Code"); *Delgado-Ugarte v. Bank of Am. Corp.*, No. 15-2332, 2016 WL 3129129, at *1 (D.P.R. June 1, 2016) (dismissing plaintiff's "negligent and intentional infliction of emotional distress pursuant to Articles 1802 and 1803 of the Puerto Rico Civil Code"). Accordingly, JetBlue assumes for the purposes of this Motion that Plaintiffs intend to assert these tort claims under New York law. Regardless, Plaintiffs' IIED and NIED claims fail for the same reasons, whether analyzed under New York, Massachusetts or Puerto Rico law.

Second, Plaintiffs' Amended Complaint fails to plausibly allege IIED or NIED claims as against JetBlue, but instead set forth vague, conclusory allegations which merely represent "threadbare recitals of the elements of" those causes of action. *Tagliaferri v. Szulik,* No. 15-cv-2685, 2015 WL 5918204, at *2 (S.D.N.Y. Oct. 9, 2015) ("The standards for pleading an actionable claim of IIED are extremely high, and 'IIED, although providing relief for plaintiffs upon occasion..., remains a highly disfavored tort under New York law.'") (internal citations omitted); *see also Rutty v. Krimko*, No. 17-cv-6090, 2018 WL 1582290, at *4 (E.D.N.Y. Mar. 30, 2018) (dismissal appropriate where "plaintiff's complaint contains a rote recitation of the elements of an intentional-infliction-of-emotional-distress claim, but does not include any facts supporting those elements."). Indeed, Plaintiffs neither identify the "extreme and outrageous" conduct in which JetBlue purported engaged nor plausibly allege that JetBlue "intentionally" or "negligently"[13] caused them "severe emotional distress." *See Chau*, 357 F. Supp. 3d at 287-89.

Third, Plaintiffs' IIED and NIED claims are mutually exclusive; even if one survives, the other must be dismissed. *See, e.g.*, *Bah v. City of New York*, 13 cv 6690 (PKC)(KNF), 2014 WL 1760063, at *13 (S.D.N.Y. May 1, 2014) ("Under New York law, harm predicated on an intentional act may not give rise to a claim of negligence.").

Fourth, to the extent that Plaintiffs' tort claims are asserted on a theory of respondeat superior for Johnson and/or Watson's alleged conduct, they fail because this alleged conduct was plainly committed outside the scope of their employment. *See Chau*, 357 F. Supp. 3d at 290-291 ("To state [a] claim for respondeat superior, a plaintiff must plead facts showing, among other things, that the tortious conduct causing the injury was undertaken within the scope of the employee's duties to the employer and was thus in furtherance of the employer's interests."). As

---

[13]    For instance, Plaintiffs do not plausibly allege any facts suggesting that JetBlue knew or should have known of Johnson and/or Watson's "propensity for the sort of conduct which caused [Plaintiffs'] injur[ies]." *Sheila C. v. Povich*, 11 A.D.3d 120, 130 (3rd Dep't 2004).

Judge Castel recently observed, "[n]o decision in New York has been cited to date in which the doctrine of respondeat superior was held to apply to sexual assault." *Id.* at 291; *see also Swarna v. Al-Awadi,* 622 F.3d 123, 144–45 (2d Cir. 2010) ("New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context.").

> **5.      Plaintiffs' claims under Puerto Rico law fail for numerous reasons, including many of those already set forth above.**

Plaintiffs' Amended Complaint also sets forth a number of baseless claims for "violations of the laws of Puerto Rico." (Am. Compl. ¶¶ 137-138.)

First, Plaintiffs' claims of sex discrimination under Puerto Rico Laws 17, 69, and 100 – all of which "serve virtually identical purposes and outlaw virtually identical behaviors" – should be dismissed for the same reasons as Plaintiffs' discrimination claims under Title VII, the NYSHRL, and the NYCHRL discussed in Sections V(C)(1) and (3), *supra*. *Rojas-Ramirez v. BMJ Foods, Inc.*, No. 09-cv-1593, 2011 WL 693621, at *10 (D.P.R. Feb. 24, 2011); *see also Polanco v. UPS Freight Servs., Inc.*, 217 F. Supp. 3d 470, 502 (D.P.R. 2016).

Second, Plaintiffs' claim of retaliation under Puerto Rico Law 115 should be dismissed for the same reason as Plaintiffs' retaliation claims under Title VII and the NYSHRL discussed in Sections V(C)(2) and (3), *supra*: Plaintiffs have not suffered any adverse employment action. *See, e.g.*, *Godoy v. Maplehurst Bakeries, Inc.*, 747 F. Supp. 2d 298, 318 (D.P.R. 2010). The claim also fails because Plaintiffs do not – and cannot – plausibly allege that they engaged in protected activity under the law, *i.e.*, that they "off[ered] or attempt[ed] to offer, verbally or in writing, any testimony, expression or information before a legislative administrative or judicial forum in Puerto Rico." 29 L.P.R.A. § 194a.

Third, Plaintiffs' claims under Articles 1802 and 1803 of the Puerto Rico Civil Code should be dismissed because they are duplicative of Plaintiffs' claims under Puerto Rico Laws 17, 69, 100, and 115. *See Maldonado-Catala*, 2016 WL 1411355, at *5 ("Where 'Article 1802 and 1803 claims are based on the same facts that give rise to asserted causes of action under Puerto Rico's special employment statutes,' the Article 1802 and 1803 claims are not cognizable.") (internal citations omitted). Further, Plaintiffs do not plausibly allege any basis to hold JetBlue liable for the purported conduct of Johnson and/or Watson on a theory of respondeat superior. To the contrary, Article 1802 only provides for "direct liability," and JetBlue cannot be held liable for the alleged conduct of off-duty non-supervisory employees under Article 1803. *Rivera-Concepcion v. Puerto Rico*, 786 F. Supp. 2d 442, 451 n.6 (D.P.R. 2010); 31 L.P.R.A. § 5141 ("A person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done."); 31 L.P.R.A. § 5142 ("Owners or directors of an establishment or enterprise are likewise liable for any damages caused by their employees in the service of the branches in which the latter are employed or on account of their duties."); *see also Jorge v. Galarza-Soto*, 124 F. Supp. 3d 57, 71 (D.P.R. 2015) ("Turning to the present case, the court agrees with Defendants that Plaintiffs have failed to plead sufficient facts to state a claim against Galarza under Article 1803 to hold him vicariously liable for the damages caused by Ortiz."); *Chau*, 357 F. Supp. 3d at 290-291.

Finally, Plaintiffs' purported claims for alleged violations of the Puerto Rico Constitution fail because it is well established that such claims are not cognizable as a matter of law. *See, e.g.*, *Maldonado-Catala v. Municipality of Naranjito*, No. 13-cv-1561, 2016 WL 1411355, at *5 (D.P.R. Apr. 11, 2016), aff'd, 876 F.3d 1 (1st Cir. 2017) ("This court has repeatedly noted that the Puerto Rico Supreme Court has not recognized a 'private cause of action for sex

discrimination' under Article II, Section 1 of the Puerto Rico Constitution, and [plaintiff] does not cite any authority indicating a change in Puerto Rico law.").

## VI.     CONCLUSION

Based on the foregoing, JetBlue respectfully requests that the Court dismiss Plaintiffs' Amended Complaint, in its entirety and with prejudice, for improper venue or for failure to state a claim as against JetBlue; or, in the alternative, to transfer the case to a proper and/or more appropriate venue; and for such other and further relief the Court deems proper.

Dated: October 25, 2019
      New York, New York

                          Respectfully submitted,

                          JETBLUE AIRWAYS CORPORATION

                          By its attorneys,

                          */s/ Samantha Abeysekera*
                          Samantha Abeysekera
                          samantha.abeysekera@akerman.com
                          Matthew A. Steinberg
                          matthew.steinberg@akerman.com
                          Raymond J. Berti
                          raymond.berti@akerman.com
                          AKERMAN LLP
                          666 Fifth Avenue, 20th Floor
                          New York, New York 10103
                          Telephone: (212) 880-3800
                          Fax: (212) 905-6481