UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JANE DOE # 1 and JANE DOE # 2, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 20-cv-11623-ADB |
| JETBLUE AIRWAYS CORPORATION, | * | |
| ERIC JOHNSON, and DAN WATSON, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Jane Doe # 1 and Jane Doe # 2 (collectively "Plaintiffs") assert various claims against

JetBlue Airways Corporation ("JetBlue"), Eric Johnson, ("Johnson"), and Dan Watson

("Watson," and, together with JetBlue and Johnson, "Defendants") in connection with an alleged

sexual assault and attempted sexual assault that occurred during a layover in San Juan, Puerto

Rico.  [ECF No. 46 ("SAC")].  Currently before the Court are Defendants' motions to dismiss

Plaintiffs' second amended complaint, [ECF Nos. 62 (JetBlue), 64 (Watson), 66 (Johnson)], and

Plaintiffs' motion to proceed under pseudonyms, [ECF No. 72].  For the reasons set forth below,

Watson and Johnson's motions to dismiss for lack of personal jurisdiction are <u>DENIED</u> in favor

of transfer, and the case will be transferred to the District of Puerto Rico.  Because the Court

lacks jurisdiction over Watson and Johnson, it will not address the remaining arguments raised in

Defendants' motions to dismiss or in Plaintiffs' motion to proceed under pseudonyms.

Accordingly, those motions are <u>DENIED</u> without prejudice.

I.       BACKGROUND

       A.      Factual Background

       The following facts are drawn from the second amended complaint, [SAC], the

well-pleaded allegations of which are taken as true for the purposes of evaluating the motion to

dismiss.  See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).

       Plaintiffs are JetBlue flight attendants based out of Logan International Airport ("Logan")

in Boston, Massachusetts.  [SAC ¶¶ 2, 9].  JetBlue is a corporation with its principal place of

business in New York, and business locations in both Massachusetts and Puerto Rico.  [Id. ¶¶ 7,

11].  Johnson and Watson are Boston-based JetBlue pilots who regularly worked out of Logan.

[Id. ¶¶ 3, 10].  They each reported to Boston-based managers, were subject to Boston-based labor

relations practices, and "accept[ed] employment conditioned upon training and policies in

Massachusetts for sexual harassment."  [Id. ¶ 3].

       On or about May 9, 2018, Plaintiffs worked a flight from Washington, DC to San Juan,

Puerto Rico with a scheduled return flight to Newark, New Jersey after a layover in Puerto Rico.

[SAC ¶¶ 12, 40].  They arrived in San Juan around 1 PM.  [Id. ¶¶ 12, 40].  While in San Juan,

the Plaintiffs, along with a third crewmember who is not a party to this lawsuit ("Jane Doe # 3"),

checked into their hotel and then went to the beach to relax.  [Id. ¶¶ 13, 42].  Plaintiffs and Jane

Doe # 3 noticed Johnson and Watson who were also at the beach and began talking to them.  [Id.

¶¶ 15, 43].  During the conversation, they learned that Watson and Johnson were both pilots for

JetBlue.  [Id.].  As they talked, Johnson handed Jane Doe #1 an open beer from his lunch box.

[Id. ¶¶ 16, 44].  Plaintiffs and Jane Doe # 3 all drank from the beer can.  [Id.].

       The beer from Johnson's lunch box was laced with a drug, and "the rest of the night

became a blur" for Plaintiffs and Jane Doe #3.  [SAC ¶¶ 16, 44].  Jane Doe # 1 does not

remember leaving the beach or getting back to the hotel.  [Id. ¶ 17].  The next thing she

remembers from that day is being raped by Johnson while in a bed with Jane Doe # 3.  [Id. ¶ 18].

Because she was under the influence of the drug, Jane Doe # 1 knew that she was being raped,

but was unable to react to the situation.  [Id.].  She also remembers Johnson having sexual

intercourse with Jane Doe # 3, who was also under the influence of the drug.  [Id.].  Watson was

not present during the rape, having left the group earlier in the day.  [Id. ¶ 27].

Jane Doe # 2's next clear memory after drinking from the beer can is being in the hotel's

elevator.  [SAC ¶ 45].  She is not sure how she got to the elevator or left the beach.  [Id.].  While

on the elevator, she recalls Johnson saying, "we'll take [Doe # 2] up to her floor first."  [Id.].

She thought this statement was odd because her room was on a higher floor than her fellow

crewmembers.  [Id.].  Although Johnson and Watson drugged Jane Doe # 2 and intended to rape

her, they never did because she began vomiting and continued to vomit throughout the night.

[Id. ¶¶ 45–46].

The next morning, Jane Doe # 1 felt groggy and numb.  [SAC ¶ 19].  Jane Doe # 2 also

felt a sleepiness which she had "never felt in her life" and was "in a weird out of body fog."  [Id.

¶ 47].  After boarding their return flight to Newark, Jane Doe #1 discussed the previous night

with Jane Doe # 3.  [Id. ¶ 19].  They were both stunned by what had happened.  [Id.].  Jane Doe

# 2 and Jane Doe # 3 were nauseous and vomited during the flight.  [Id.].

After arriving in Newark on May 10, 2018, Plaintiffs and Jane Doe # 3 met up to figure

out what had happened the night before.  [SAC ¶¶ 21, 48].  They discussed that they all felt

nausea and dizziness, had memory loss, vomiting, and did "not feel[ ] a reaction to the events"

from the previous night.  [Id. ¶ 21].  These symptoms all occurred right after drinking from

Johnson's beer can.  [Id.].  After some research, they determined that their symptoms were consistent with them having been drugged by "rape drugs."  [Id.].

Also on May 10, 2018, Jane Doe # 1 contacted Johnson because she was afraid that she had been exposed to a sexually transmitted disease ("STD") during the rape.  [SAC ¶ 20].  After Johnson replied to her email, Jane Doe # 1 asked him if he had any STDs and Johnson replied that he would get tested.  [Id. ¶ 22].

On or around May 11, 2018, Jane Doe # 1 flew home and went to the hospital immediately upon landing.  [SAC ¶ 23].  She informed the hospital that she had been drugged and sexually assaulted, and asked to be tested for drugs.  [Id.].  She was tested and was given medicine to help prevent STDs.  [Id.].  The hospital reported the incident to the police, and the police prepared a report.  [Id.].  Jane Doe #1 later learned from her doctor that she had contracted human papillomavirus ("HPV").  [Id. ¶ 25].  Because Plaintiff had previously tested negative for STDs, the only way she could have contracted HPV was from Johnson.  [Id.].

Jane Doe # 1 reported the sexual assault, rape, and gender discrimination to JetBlue at its New York corporate headquarters.  [SAC ¶ 24].  Although JetBlue investigated the matter, it did not take any corrective action against Johnson or Watson in response to Jane Doe # 1's complaint.  [Id. ¶ 29].  Jane Doe # 2 also reported to JetBlue that Johnson and Watson had given her drugged beer and intended to rape and assault her.  [Id. ¶¶ 51, 62].

Plaintiffs believe JetBlue's investigation was inadequate because JetBlue failed to (1) investigate relevant witnesses; (2) review relevant documents and "scrutinize" Johnson and Watson's expense records during layovers; and (3) provide Plaintiffs with Johnson and Watson's statements.  [SAC ¶ 70].  JetBlue has not terminated Johnson or Watson and has not guaranteed that Plaintiffs will not encounter Johnson or Watson while on duty.  [Id. ¶¶ 29, 71–72].  In order

to avoid Johnson and Watson, Plaintiffs have opted out of working any flights on a certain type of aircraft, the Embraer E190, because Johnson and Watson also work those flights. [Id. ¶¶ 30, 52]. Avoiding these flights prevents Plaintiffs from working on over 750 flights, which has resulted in a loss of seniority status and financial opportunities. [Id.].

Jane Doe # 1 also tries to avoid layovers unless she feels very comfortable and safe with the crew, remains "constantly vigilant," and does not have more than one alcoholic drink. [SAC ¶ 32]. She avoids layovers in San Juan in particular and when she does have the occasional layover in San Juan, she tries not to interact with the crew or leave her hotel room to avoid encountering Johnson or Watson. [Id. ¶ 31]. She also avoids crew lounges outside of New York and looks up Watson and Johnson's schedules to determine if her flight plans overlap with theirs. [Id. ¶ 33]. Around February 2019, Jane Doe # 2 encountered Johnson in the employee break room in San Juan while she was eating lunch with her crewmates. [Id. ¶ 53]. She began to panic and had to quickly leave the room. [Id.].

As a result of Defendants' actions, Plaintiffs felt humiliated, embarrassed, victimized, degraded, and emotionally distressed. [SAC ¶¶ 37, 57]. They have also experienced a loss of income and other compensation associated with their employment. [Id. ¶¶ 38, 58].

**B.   Procedural Background**

Plaintiffs originally filed suit in the Eastern District of New York on March 18, 2019. [ECF No. 1]. Plaintiffs amended their complaint on September 24, 2019. [ECF No. 20]. JetBlue moved to dismiss the amended complaint or, in the alternative, to transfer venue. [ECF No. 34]. Watson and Johnson also moved to dismiss the amended complaint. [ECF Nos. 30 (Johnson), 35 (Watson)]. On August 11, 2020, the Eastern District of New York court transferred the case to the District of Massachusetts after finding that it did not have venue.

[ECF No. 37].  On September 3, 2020, this Court allowed Plaintiffs to file a second amended complaint and Defendants to renew their motions to dismiss.  [ECF No. 40].  Plaintiffs filed their second amended complaint on September 25, 2020.  [SAC].

Plaintiffs' second amended complaint asserts twenty state and federal claims: (1) claims against JetBlue under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Counts I–II), [SAC ¶¶ 73–78]; (2) claims against Defendants under multiple New York state and New York City laws (Counts III–X, XII–XIII), [id. ¶¶ 79–104, 107–22]; (3) a claim against Watson and Johnson for assault and battery (Count XI), [id. ¶¶ 105–06]; (4) claims against Defendants for intentional and negligent infliction of emotional distress (Counts XIV–XV), [id. ¶¶ 123–40]; (5) a claim against Defendants for violations of various laws of Puerto Rico and the Puerto Rico Constitution (Count XVI), [id. ¶¶ 141–42]; (6) a claim against Johnson for negligence and failure to warn Jane Doe # 1 (Count XVII), [id. ¶¶ 143–48]; and (7) claims against Defendants under Massachusetts General Laws chapter 151B (Counts XVIII–XX), [id. ¶¶ 149–61].

On October 30, 2020, Defendants moved to dismiss the second amended complaint. [ECF Nos. 62 (JetBlue), 64 (Watson), 66 (Johnson)].  JetBlue moved to dismiss for failure to state a claim.  [ECF No. 62].  Watson moved to dismiss for (1) lack of personal jurisdiction; (2) failure to state a claim; and (3) lack of subject matter jurisdiction over Counts III–X.  [ECF No. 64].  Johnson moved to dismiss for (1) lack of personal jurisdiction; and (2) failure to state a claim.  [ECF No. 66].  Plaintiffs opposed all three motions, [ECF No. 69], and Defendants

replied.  [ECF Nos. 76 (Johnson), 77 (JetBlue), 78 (Watson)].  Plaintiffs also filed a sealed

motion to proceed under pseudonyms, [ECF No. 72],[1] which Defendants opposed, [ECF No. 81].

## II.     PERSONAL JURISDICTION

Watson and Johnson both move to dismiss all claims against them under Federal Rule of

Civil Procedure 12(b)(2), claiming that the Court cannot exercise personal jurisdiction over

them.  [ECF No. 63 at 10–15; ECF No. 65 at 11–19].[2]  According to Johnson and Watson, the

complaint does not allege that they are domiciled in Massachusetts, [ECF No. 63 at 8; ECF No.

65 at 16 n.5], and the only Massachusetts-based activities alleged in the complaint are unrelated

to Plaintiffs' causes of action against them, [ECF No. 63 at 11–12; ECF No. 65 at 13–17].

### A.     Legal Standard

Plaintiffs bear the burden of establishing that jurisdiction exists over Johnson and

Watson.  A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) (citing Phillips v.

Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)).  "When a district court rules on a motion to

dismiss for lack of personal jurisdiction without holding an evidentiary hearing . . . the 'prima

facie' standard governs its determination."  United States v. Swiss Am. Bank, Ltd., 274 F.3d

610, 618 (1st Cir. 2001).  Under the prima facie standard, the plaintiff must proffer "evidence

which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction."

A Corp., 812 F.3d at 58 (quoting Prairie Eye Ctr., 530 F.3d at 26).  "[P]laintiffs may not rely on

unsupported allegations in their pleadings," and are instead "obliged to adduce evidence of

specific facts" supporting jurisdiction.  Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 134

---

[1] The Court granted Plaintiffs' request to file that motion under seal.  [ECF No. 71].

[2] Watson joins in Johnson's arguments regarding personal jurisdiction to the extent they are applicable to him.  [ECF No. 65 at 11 n.2].

(1st Cir. 2006) (first quoting <u>Boit v. Gar-Tec Prods., Inc.</u>, 967 F.2d 671, 675 (1st Cir. 1992), then

quoting <u>Foster-Miller, Inc. v. Babcock & Wilcox Can.</u>, 46 F.3d 138, 145 (1st Cir. 1995)).  The

Court takes as true whatever properly documented facts a plaintiff proffers, construes those facts

in the light most favorable to the plaintiff, and considers facts put forward by the defendant only

to the extent they are uncontradicted.  <u>See</u> <u>Prairie Eye Ctr.</u>, 530 F.3d at 26; <u>Platten</u>, 437 F.3d at

134.

 "Because the [Massachusetts] long-arm statute imposes specific constraints on the

exercise of personal jurisdiction that are not coextensive with the parameters of due process . . . a

determination under the long-arm statute is to precede consideration of the constitutional

question."  <u>SCVNGR, Inc. v. Punchh, Inc.</u>, 85 N.E.3d 50, 52 (Mass. 2017).  Section 3 of the

Massachusetts long-arm statute allows for the exercise of "personal jurisdiction over a person,

who acts directly or by an agent, as to a cause of action in law or equity arising from" various

activities within or outside of the Commonwealth.  Mass. Gen. Laws ch. 223A, § 3.

### B. Application to Johnson and Watson

 Plaintiffs assert that personal jurisdiction is proper under § 3(a) and §§ 3(c)–(d) of the

Massachusetts long-arm statute.[3]  [ECF No. 69 at 39–42].  Watson and Johnson counter that

Plaintiffs have failed to show that their claims arise from Watson and Johnson's contacts with

Massachusetts and that Plaintiffs have not otherwise satisfied the requirements of the long-arm

statute.  [ECF No. 65 at 12–15; ECF No. 76 at 6–10].

 Section 3(a) of the Massachusetts long-arm statute states that "[a] court may exercise

personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in

---

[3] Because Plaintiffs have not argued jurisdiction would be proper under § 3(b) or §§ 3(e)–(h), the
Court does not consider those provisions.

law or equity arising from the person's . . . transacting any business in this commonwealth . . . ."
Mass. Gen. Laws ch. 223A, § 3(a). Section 3(a)'s "reference to 'transacting any business' does
not require that the defendant have engaged in commercial activity. That language is general and
applies to any purposeful acts by an individual, whether personal, private, or commercial."
Ealing Corp. v. Harrods Ltd., 790 F.2d 978, 982 (1st Cir. 1986) (quoting Ross v. Ross, 358
N.E.2d 437, 439 (Mass. 1976)). "[T]he defendant's involvement need not be major, as 'just a
few acts on [his] part can often suffice to satisfy [subsection (a)]'s threshold for transacting
business.'" Scuderi Grp., LLC v. LGD Tech., LLC, 575 F. Supp. 2d 312, 319 (D. Mass. 2008)
(quoting Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F. Supp. 2d 102, 110 (D.
Mass. 2003)). Although "transacting business" "has been construed broadly," Tatro v. Manor
Care, Inc., 625 N.E.2d 549, 551 (Mass. 1994) (citations omitted), the test "is designed to identify
deliberate, as distinguished from fortuitous, contacts with the forum by the nonresident party,"
Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997)).

"The 'arising from' clause in [the Massachusetts long-arm statute] is . . . generously
construed in favor of asserting personal jurisdiction, by applying a 'but for' causation test."
Workgroup Tech. Corp., 246 F. Supp. 2d at 112. "[A] claim arises from a defendant's
transaction of business in the forum State if the claim was made possible by, or lies in the wake
of, the transaction of business in the forum State." Access Now, Inc. v. Otter Prods., LLC, 280
F. Supp. 3d 287, 291 (D. Mass. 2017) (quoting Tatro, 625 N.E.2d at 553). The arising from
inquiry asks whether "the defendant's contacts with the Commonwealth constitute the first step
in a train of events that result[ed] in the . . . injury." Id. (internal quotation marks omitted)
(quoting Lyle Richards Int'l, Ltd., 132 F.3d at 114).

Plaintiffs argue that "transacting business" is construed broadly, [ECF No. 69 at 39–40], and rely on the following relevant facts to support jurisdiction under § 3(a): (1) Johnson and Watson reported to Boston-based managers and accepted employment "conditioned upon training and policies in Massachusetts for sexual harassment;" (2) Johnson and Watson were Boston-based pilots for purposes of JetBlue's labor relations practices; (3) Johnson and Watson regularly flew in and out of Logan airport; (4) Johnson and Watson received regular wages and were disciplined as Boston-based employees; (5) Johnson and Watson participated in JetBlue's investigation of Plaintiff's complaints in Massachusetts and Massachusetts-based JetBlue employees investigated Plaintiffs' complaints; and (6) JetBlue's Boston office generally has responsibility for "investigating, remedying and deterring complaints by flight attendants assigned out of the Logan Airport base of sexual harassment." [Id. at 40–41]. The Court agrees that, when taken as true, these facts establish that Johnson and Watson transact business in Massachusetts.

The Court next considers if the causes of action asserted against Watson and Johnson arise from their business transactions in Massachusetts, see Access Now, Inc., 280 F. Supp. 3d at 292 ("The next step is to determine whether the 'arises from' requirement is met."), and finds that they do not. Plaintiffs' causes of action against Watson and Johnson allege violations of New York, New York City, Puerto Rico, and Massachusetts employment discrimination laws; assault and battery; aggravated sexual abuse; intentional and negligent infliction of emotional distress; violation of the New York City Victims of Gender-Motivated Violence Protection Act; and failure to warn and negligence. [SAC ¶¶ 79–148, 153–61]. Plaintiffs do not allege and have not otherwise proven that any of Watson or Johnson's "contacts with the Commonwealth constitute[d] the first step in a train of events that result[ed] in the . . . injury." See Access Now,

Inc., 280 F. Supp. 3d at 291.  The fact that Watson and Johnson reported to Boston-based

managers, followed Boston-based employment practices, and frequently flew in and out of

Boston does not establish a connection between Massachusetts and the injuries Plaintiffs suffered

as a result of being drugged and assaulted in San Juan.  Even though Plaintiffs allege that

Johnson and Watson participated in JetBlue's investigation of Plaintiffs' complaints in

Massachusetts, Johnson and Watsons's participation in that investigation is not a "but for" cause

of any of the claims that Plaintiffs assert against them.  Therefore, personal jurisdiction is not

proper under § 3(a).

The Court next considers personal jurisdiction pursuant to § 3(c) of the Massachusetts

long-arm statute, which states that "[a] court may exercise personal jurisdiction over a person,

who acts directly or by an agent, as to a cause of action in law or equity arising from the person's

. . . causing tortious injury by an act or omission in this commonwealth."  Mass. Gen. Laws ch.

223A, § 3(c).  "[S]ection 3(c) requires a well-pleaded allegation that a defendant did some act *in*

the Commonwealth that caused the plaintiff harm."  Collison Commc'ns, Inc. v. Nokia Sols. &

Networks Oy, 485 F. Supp. 3d 282, 293 (D. Mass. 2020) (quoting Noonan v. Winston Co., 902

F. Supp. 298, 306 (D. Mass. 1995)) (emphasis and alteration in original)).

In their opposition brief, Plaintiffs argue that jurisdiction under § 3(c) is proper because

they allege that Watson and Johnson participated in the investigation in Massachusetts and were

trained about sexual harassment in Massachusetts.  [ECF No. 69 at 41 (citing SAC ¶¶ 3, 70)].

The second amended complaint, however, does not contain any allegations suggesting that

receiving sexual harassment training or participating in the investigation caused any injury to

Plaintiffs.  At most, the second amended complaint alleges that JetBlue failed to promptly and

adequately investigate and remedy Plaintiffs' complaints, [SAC ¶¶ 62–72], but not that any

tortious injury arose from Johnson and Watson's participation in the investigation.[4]

Finally, the Court considers personal jurisdiction under § 3(d), which states that

[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

Mass. Gen. Laws ch. 223A, § 3(d).  Section 3(d) is the Massachusetts long-arm statute's general

personal jurisdiction provision and is applicable only if the defendant is subject to general

personal jurisdiction in Massachusetts.  See Pettengill v. Curtis, 584 F. Supp. 2d 348, 357 (D.

Mass. 2008) ("§ 3(d) would only apply if general jurisdiction existed over the . . .

[d]efendants."); Krua v. Sirleaf, No. 18-cv-10574, 2019 WL 1936733, at *4 (D. Mass. May 1,

2019) ("[Plaintiffs] have also not alleged sufficient facts to establish general jurisdiction . . .

which is necessary for jurisdiction under § 3(d)." (citing Pettengill, 584 F. Supp. 2d at 357)).

In support of jurisdiction under § 3(d), Plaintiffs assert that Watson and Johnson

physically participated in the investigation of Plaintiffs' complaints in Massachusetts and that

out-of-state activity by Johnson and Watson caused injury to Plaintiffs in Massachusetts.  [ECF

No. 69 at 42].  Although Plaintiffs certainly allege tortious injury that occurred out of state, they

---

[4] In their opposition brief, Plaintiffs also argue that jurisdiction is established under § 3(c) because "[a] jury could infer that the statements of [Johnson and Watson] in [JetBlue's] investigation, failed to acknowledge the rape of the Plaintiffs which caused an actionable failure to investigate, remedy, and deter a hostile environment."  [ECF No. 69 at 41].  This argument does not satisfy Plaintiffs' burden to demonstrate personal jurisdiction.  The second amended complaint does not allege that Watson or Johnson's statements were false, Plaintiffs have failed to otherwise substantiate those allegations, and the second amended complaint does not allege causes of action against Watson and Johnson based on fraud or misrepresentation.

have not alleged or otherwise offered evidence to establish the level of contacts needed to satisfy § 3(d) because neither Watson nor Johnson is subject to general jurisdiction in Massachusetts.

Plaintiffs maintain that it is appropriate for this Court to exercise general personal jurisdiction over Watson and Johnson because "continuous and systematic employment, training, management, investigations, and authority as Pilots In Command emanated for both individual Defendants from Massachusetts." [ECF No. 69 at 43].

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011)). A court may also assert general jurisdiction over an individual when the individual explicitly consents or is physically present in the forum state when served. See Grice v. VIM Holdings Group, LLC, 280 F. Supp. 3d 258, 270 (D. Mass. 2017) (first citing J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 880 (2011), then citing Burnham v. Super. Court of Cal., 495 U.S. 604, 619 (1990)).

Here, the second amended complaint does not allege that either Johnson or Watson are domiciled in Massachusetts, that they consented to jurisdiction, or that they were physically present in Massachusetts when served. Most of Johnson and Watson's alleged contacts with Massachusetts arise from the fact that they frequently fly through Boston, answer to Boston-based managers, and are subject to policies from JetBlue's Boston offices. Plaintiffs point to no binding case law, and the Court is aware of none, to show that these contacts would subject Johnson and Watson to general jurisdiction in Massachusetts even though they are not domiciled here.

"Because there is no provision of the long-arm statute on which to predicate jurisdiction, the Court need not reach the question of whether [plaintiff's] assertion is constitutionally sound."

Mello v. K-Mart Corp., 604 F. Supp. 769, 772 (D. Mass. 1985) (citing Singer v. Piaggio & C.,
420 F.2d 679, 681 (1st Cir. 1969)).  Accordingly, the Court finds that it lacks personal
jurisdiction over Johnson and Watson, but as described below, the motions to dismiss for lack of
personal jurisdiction are DENIED in favor of transfer.

C.     **Jurisdictional Discovery**

Plaintiffs alternatively request that the Court allow for jurisdictional discovery, [ECF No.
69 at 48], which the district court may permit in its "broad discretion."  United States v. Swiss
Am. Bank, Ltd., 274 F.3d 610, 626 (1st Cir. 2001).  Plaintiffs have presented no argument as to
"why jurisdiction would be found if discovery were permitted," and the Court sees no reason to
allow it.  Id.  Plaintiffs request that they be permitted to take discovery related to (1) JetBlue's
notices to employees about the state agencies that govern discrimination complaints and
(2) JetBlue's sexual harassment policies.  [ECF No. 69 at 48].  Plaintiffs' request does not
explain how discovery into JetBlue's policies and practices would be relevant as to whether the
Court can exercise personal jurisdiction over Johnson and Watson.  Because Plaintiffs have not
shown that discovery would change the analysis or reveal relevant evidence that is not already
alleged in the second amended complaint, they are not entitled to jurisdictional discovery.

D.     **Transfer**

Although this Court may not exercise personal jurisdiction over Watson and Johnson,
under 28 U.S.C. § 1631, a district court may transfer a case to another district to cure a lack of
jurisdiction:

> Whenever a civil action is filed in a court . . . and that court finds that there is a
> want of jurisdiction, the court shall, if it is in the interest of justice, transfer such
> action or appeal to any other such court . . . in which the action or appeal could have
> been brought at the time it was filed or noticed, and the action or appeal shall
> proceed as if it had been filed in or noticed for the court to which it is transferred

on the date upon which it was actually filed in or noticed for the court from which
it is transferred.

28 U.S.C. § 1631.

"The First Circuit has interpreted this provision to establish a presumption in favor of

transfer—rather than dismissal—when the forum court lacks personal jurisdiction over one of the

defendants." TargetSmart Holdings, LLC v. GHP Advisors, LLC, 366 F. Supp. 3d 195, 214 (D.

Mass. 2019) (citing Federal Home Loan Bank of Boston v. Moody's Corp., 821 F.3d 102, 119

(1st Cir. 2016)); see also Britell v. United States, 318 F.3d 70, 73 (1st Cir. 2003) ("Congress's

use of the phrase 'shall . . . transfer' in section 1631 persuasively indicates that transfer, rather

than dismissal, is the option of choice.").

To determine whether transfer of this case is appropriate and, if so, where it should be

transferred to, the Court must consider the issue of venue.

"[T]he term 'venue' refers to the geographic specification of the proper court or courts

for the litigation of a civil action that is within the subject-matter jurisdiction of the district

courts."  28 U.S.C. § 1390(a).  "[T]he general purpose of the venue rules is 'to protect the

defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial.'"

Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009) (alteration in

original) (quoting Leroy v. Great W. United Corp., 443 U.S. 173, 183–84 (1979)).  The general

venue statute provides that a civil action may be brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents
> of the State in which the district is located; (2) a judicial district in which a
> substantial part of the events or omissions giving rise to the claim occurred, or a
> substantial part of property that is the subject of the action is situated; or (3) if there
> is no district in which an action may otherwise be brought as provided in this
> section, any judicial district in which any defendant is subject to the court's
> personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

"'[A]mple authority' exists that the burden of establishing venue is on the plaintiff."  Gill v. Nakamura, No. 14-cv-13621, 2015 WL 5074475, at *2 (D. Mass. July 24, 2015) (citing Cordis Corp. v. Cardiac Pacemakers, 599 F.2d 1085, 1086 (1st Cir. 1979)).  Because the Court has found that it does not have personal jurisdiction over Watson and Johnson, venue is improper in this judicial district.  See Moore v. S.N.H. Med. Ctr., No. 08-cv-11751, 2009 WL 5214879, at *10 (D. Mass. Aug. 18, 2009) (finding that, because defendant was not subject to personal jurisdiction in Massachusetts, defendant did not reside in Massachusetts and venue was inappropriate).

Similar to § 1631, under 28 U.S.C. § 1406(a), a district court may "'transfer [a] case to any district or division in which it could have been brought' if it 'lay[s] venue in the wrong division or district' and transfer is 'in the interest of justice.'"  TargetSmart Holdings, 366 F. Supp. 3d at 214 (alterations in original) (citing 28 U.S.C. § 1406(a)).  Although § 1406 "does not explicitly mention jurisdiction, the Supreme Court has interpreted its mandate to 'authorize transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed has personal jurisdiction over the defendants or not.'"  Id. (quoting Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962)).

Both § 1406 and § 1631 support transfer over dismissal in the interests of justice and to promote judicial economy.  See Britell, 318 F.3d at 74 (stating that the legislative history of § 1631 favors transfer over dismissal of "an action . . . that might thrive elsewhere" as furthering "the salutary policy favoring the resolution of cases on the merits"); TargetSmart Holdings, 366 F. Supp. 3d at 214 (stating that transfer under § 1406 would promote the interest of justice and "facilitate the speedy and efficient resolution of [the] case").  There exists a strong public interest in "prevent[ing] duplicitous litigation that would prove 'wasteful and costly,'" which also

supports transfer over dismissal.  Britell, 318 F.3d at 74 (quoting S. Rep. No. 97-275, at 11 (1982), reprinted in 1982 U.S.C.C.A.N. 11, 21).

Although Massachusetts is an inappropriate venue for the claims asserted against Johnson and Watson, the record contains sufficient facts to indicate that the District of Puerto Rico is an appropriate venue in which to litigate this matter as it is the judicial district where the alleged drugging and assault, which gave rise to this action, took place.  For this reason, and because substantive public interests weigh in favor of transfer rather than dismissal of Plaintiffs' case, this Court finds it proper and in the interests of justice to transfer this matter to the District of Puerto Rico.  See, e.g., Phoenix Ins. Co. v. Cincinnati Indem. Co., No. 16-cv-00223, 2017 WL 3225924, at *6 (D.R.I. Mar. 3, 2017) ("[D]ue to the lack of personal jurisdiction and proper venue in this District and the totality of the circumstances, I conclude that the interests of justice would be better served by transfer of this action . . . than by dismissal under Rules 12(b)(2) and (3) . . . ."), R.&R. adopted, 2017 WL 2983879 (D.R.I. July 13, 2017).

Finally, although the Court has reviewed personal jurisdiction only as to Johnson and Watson, the claims against JetBlue will be transferred as well.  Even though Massachusetts is a proper venue for Plaintiffs' claims against JetBlue, a Court may, "in the interest of justice," transfer a matter "to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Because the claims against JetBlue could have been brought in the District of Puerto Rico, the transfer of those claims is also appropriate.  First, Plaintiffs' Title VII claims are subject to their own venue statute which provides that

> [A]n action may be brought in [1] any judicial district in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are maintained and administered or in [3] the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if respondent is not

found within any such district, such an action may be brought within the judicial
district in which the respondent has his principal office.

42 U.S.C. § 2000e–5(f)(3).  Here, the assault, which created the hostile work environment and

led to the gender and sex discrimination that Plaintiffs allegedly experienced, took place in

Puerto Rico.  Accordingly, venue is proper in the District of Puerto Rico.  The Court also notes

that in previous briefings, JetBlue conceded that venue would be proper in the District of Puerto

Rico for the Title VII claims asserted against it.  [ECF No. 34-1 at 23-24 (JetBlue explaining that

"the only judicial district in which Plaintiffs' Title VII claims may be properly litigated is the one

in which an unlawful employment practice is alleged to have been committed – here, . . .the

District of Puerto Rico (where the alleged assault took place, and where potential witnesses,

physical and/or testimonial evidence, and/or other evidence are likely to be found) . . . .").[5]

Second, the remaining claims against JetBlue are governed by the general venue statute, § 1391,

and venue is proper in "a judicial district in which a substantial part of the events or omissions

giving rise to the claim occurred . . . ."  28 U.S.C. § 1391(b).  As explained above, a substantial

part of the events giving rise to the claims occurred in Puerto Rico.[6]

---

[5] When transferring the case to this Court, the court in the Eastern District of New York found
that the District of Puerto Rico would have been a proper venue for Plaintiffs' Title VII claims.
[ECF No. 37 at 11 ("Here, however, venue would be proper in either the District of Puerto Rico
or the District of Massachusetts.")].

[6] The Court also "has grave doubts that it has the authority under section 1406(a) to transfer only
part of a case brought against multiple defendants.  Section 1406(a) specifically applies to 'a
case' in which venue is wrongly laid and authorizes transfer of 'such case.'  Facially interpreted,
the statute appears to contemplate the transfer of an entire case."  Freund v. Fleetwood Enters.,
Inc., 745 F. Supp. 753, 755 n.5 (D. Me. 1990); see also Get in Shape Franchise, Inc. v. TFL
Fishers, LLC, 167 F. Supp. 3d 173, 195 (D. Mass. 2016) ("If venue is not proper for all of the
claims and defendants, the Court may . . . transfer the entire case to another district where venue
is proper for all claims and defendants . . . .").

## III.      REMAINING MOTIONS

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."  Sinochem Int'l Co. Ltd. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430–31 (2007) (citing Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 94 (1998)); see Acosta-Ramírez v. Banco Popular de P.R., 712 F.3d 14, 18 (1st Cir. 2013) ("Federal courts are obliged to resolve questions pertaining to . . . jurisdiction before addressing the merits of a case.").

"Because Plaintiff[s] ha[ve] not carried [their] burden to establish personal jurisdiction, the court does not address" Defendants' remaining arguments regarding dismissal.  Collision Commc'ns, Inc. v. Nokia Sols. and Networks Oy, 485 F. Supp 3d 282, 299 (D. Mass. 2020) (citing Dumitrescu v. DynCorp Int'l, LLC, 257 F. Supp. 3d 13, 16 n.2 (D.D.C. 2017)).  For these same reasons, the Court also declines to rule on the merits of Plaintiffs' motion to proceed under pseudonyms and will leave that decision to the transferee court.  Accordingly, Defendants' remaining motions to dismiss and Plaintiffs' motion to proceed under pseudonyms are DENIED without prejudice.

## IV.      CONCLUSION

Johnson and Watson's motions to dismiss for lack of personal jurisdiction are DENIED in favor of transfer to the District of Puerto Rico.  The Defendants' motions to dismiss for failure to state a claim and/or lack of subject matter jurisdiction, [ECF Nos. 62, 64, 66], are DENIED without prejudice.  Plaintiffs' motion to proceed under pseudonyms, [ECF No. 72], is also DENIED without prejudice.  The Court regrets that this case is being transferred to yet another court, but after much consideration, the Court cannot, in good conscience, find that it has

personal jurisdiction over Johnson and Watson.  This leaves it with no choice but to dismiss or transfer.  It has elected to transfer as it sees this option as least likely to further delay the resolution of this matter.

   **SO ORDERED.**

August 3, 2021             /s/ Allison D. Burroughs
                     ALLISON D. BURROUGHS
                     U.S. DISTRICT JUDGE